1

2

3

4

5

6

7 UNITED STATES DISTRICT COURT

8 FOR THE EASTERN DISTRICT OF CALIFORNIA

9
BOLAND, INC., a California
10 corporation dba S&S SUPLIES,

11                                          NO. CIV. S-08-2201 LKK/JFM
             Plaintiff,
12
        v.
13                                          O R D E R
ROLF C. HAGEN (USA) CORP.,
14 and DOES 1 through 50,
inclusive,
15
             Defendants.
16 _____/

17      Defendant "Rolf C. Hagen (USA) Corp." manufactures pet supply

18 products.  Plaintiff Boland Inc., d/b/a S&S Supplies, distributes

19 products from defendant and other manufacturers to individual

20 retailers.  In 2007, Hagen effectively eliminated the middleman by

21 offering to sell directly to retailers on the same terms offered

22 to distributors.  Plaintiff filed suit, bringing contract, trade

23 secret, and other state law claims.  Pending before the court is

24 defendant's motion for summary judgment on all claims.  The court

25 resolves this motion on the papers and after oral argument.  For

26 the reasons stated below, the motion is granted in part and denied

1

in part.[1]

# I. BACKGROUND[2]

The following discussion of the facts is meant to provide context for the present dispute. The facts are discussed in greater detail in the court's analysis.

## A. The Parties' Initial Relationship

Plaintiff Boland is a family corporation. Its president is Sam Sarkissian. Many, if not all, of its directors and managers are members of the Sarkissian family. Sometime around 1993, plaintiff began purchasing pet products from defendant and distributing these products to individual retailers. Plaintiff contends that at that time, the parties entered an oral contract regarding distribution of defendant's products. While defendant

---

[1] In the court's view, the case raises difficult issues arising under California's Statute of Frauds. The statute of frauds provides a defense to enforcement, and in this motion, defendant has not raised this issue. For this reason, and because the court concludes in this order that plaintiffs are at most entitled to limited damages, the court does not address that issue, or order the parties to brief it.

[2] Facts discussed in this order are undisputed unless otherwise noted. Citations to the undisputed facts are to facts that parties have identified as undisputed.

Defendant has lodged objections to several items of evidence relied on by plaintiff. Some of this evidence is not necessary to the resolution of the instant motion. To the extent that this evidence is relevant, defendant's objections are OVERRULED except as specified elsewhere in this order.

In particular, defendant objects to the declaration of Sam Sarkissian, arguing that a party may not oppose summary judgment by relying on allegations made in the pleadings. Defendant mischaracterizes the declaration. Although the declaration repeats many of the contentions alleged in the complaint, this similarity does not change the fact that the declaration is evidence, and that plaintiff relies on this evidence, not the earlier allegations.

disputes whether a contract was entered or is enforceable, for purposes of this motion defendant does not deny the existence of an enforceable contract. This agreement was never reduced to writing.

The distribution arrangement was non-exclusive. Plaintiff distributed defendant's products as well as competing manufacturers', defendant sold its products to plaintiff as well as to other distributors, and individual retailers purchased defendant's products from plaintiff and from other distributors. Defendant's Undisputed Facts ("Def.'s UF") 1-3, 33. Plaintiff contends that the contract contained terms regarding (1) pricing, (2) defendant's ability to sell directly to dealers, (3) plaintiff's obligation to use best efforts to promote Hagen products, and (4) termination of the agreement. The court summarizes parties' positions here, postponing discussion of the evidence offered in support of their contentions.

Defendant sold its products to plaintiff and other distributors at prices set by defendant unilaterally, and plaintiff had no right to negotiate these prices. Def.'s UF 5-6. Prior to 2007, these prices were typically one third of the suggested retail price. Deposition of Dieter Hagen, 31.

Plaintiff argues that another term of this agreement was that defendant would not sell directly to retailers. Defendant argues that plaintiff is barred from making this argument, and that there is insufficient evidence of such a term.

Plaintiff apparently contends that the contract required

plaintiff to use best efforts to promote defendant's products.[3] The parties disagree as to whether "best efforts" required plaintiff to promote defendant's products over those of other manufacturers.

Plaintiff argues that defendant could only terminate the contract if plaintiff failed to use best efforts, while defendant argues that the contract was terminable at will.

## B. Defendant's Gold Dealer Program

Plaintiff's trade secrets claims arise out defendant's "Gold Dealer" program. The program rewarded retailers for buying defendant's products. Deposition of Trevor Hagen, 31. Defendant identified and solicited the participating retailers using defendant's own information. Def.'s UF 24, 25. Plaintiff, along with other distributors, provided defendant with information regarding participating retailers' purchases. In reporting this information, plaintiff submitted to defendant lists of retailers who purchased defendant's products from plaintiff, with the name, telephone number, and net value of purchases for each retailer. Def.'s UF 26. Of this information, only the amount of sales was unknown to defendant, and the remaining information was included for identification. Def.'s UF 28.

---

[3] It is unclear whether plaintiff contends that the contract compelled plaintiff to use these efforts, such that if plaintiff did not, defendant could have sought damages for breach of contract, or whether plaintiff instead contends that failure to use best efforts would merely provide a ground for termination of the contract. While the court is hard put to understand how the breach of a conceded central term of the contract would limit defendant's relief thereafter, it may be that such a contention has viability under California law.

## D.    HagenDirect Program

In February of 2007, defendant sent a letter to plaintiff and other parties announcing defendant's intention to sell its products directly to retailers.  Compl. Ex. A; <u>see also</u> Declaration of Andrea K. Anapolsky Ex. D.[4]  Defendant had not previously sold directly to retailers in the United States.  Plaintiff's Additional Fact ("Pl.'s AF") 26.

In the letter, defendant explained that retailers would be able to purchase defendant's products at the prices previously offered to distributors.  Def.'s UF 17; Deposition of Sam Sarkissian ("Sam Depo.") 107, 108.  This letter offered to accept returns of products purchased in the previous ninety days, subject to a 10 percent restocking fee and the purchaser's payment of shipping costs.  Anapolsky Decl. Ex. D.

"Immediately prior" to this announcement, "plaintiff had purchased in excess of $200,000 of products," which defendant had already shipped.  Declaration of Sam Sarkissian ("Sam Decl.") ¶ 5. Plaintiff contends that it "requested that [defendant] accept the return of [this] [d]isputed [i]nventory and refund the price paid by plaintiff for the products," but that defendant has refused to do so.  Sam Decl. ¶ 6.  The parties have not further explained this dispute.  That is, the parties have not explained whether defendant refused to accept the inventory on the terms offered in the

_____

[4] Plaintiff refers to this letter as a "termination notice." Nothing in the letter states that it terminates any existing agreement or contract.

HagenDirect announcement, or whether plaintiff instead demanded that defendant accept different terms.[5]

Plaintiff contends that in implementing the HagenDirect program, defendant used proprietary information plaintiff had provided to defendant for a limited purpose, to wit, the information regarding the volume of products purchased by each retailer. Sam Dec. ¶ 12. Defendant contends that no evidence indicates that defendant so used this information, or that any such use would be impermissible.

## II. STANDARD FOR A FED. R. CIV. P. 56 MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir. 1984).

Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which

---

[5] At oral argument defense counsel represented that the terms of return were subject to prolonged negotiation. Nothing in the record before the court supports that assertion.

it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979), cert. denied, 455 U.S. 951 (1980).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its

7

pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 242 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)); Abramson v. University of Hawaii, 594 F.2d 202, 208 (9th Cir. 1979). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

### III. ANALYSIS

Plaintiff brings ten causes of action. Plaintiff's "contract claims" are for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment as to the parties' rights under the contract. Respectively, these are the

fifth, eighth, and fourth claims. Plaintiff's "trade secrets" claims are for misappropriation of trade secrets under Cal. Civ. Code § 3426 and common law, respectively the sixth and seventh claims. The remaining claims are for intentional interference with contractual relationship, intentional interference with prospective economic advantage, unfair competition, unjust enrichment, and injunctive relief.

**A.   Contract Claims**

Plaintiff's contract claims argue that a contract between the parties prohibited defendant from selling directly to retailers, that announcement of an intent to sell to retailers thereby terminated the contract, and that defendant did not have the right to terminate the contract in this manner and thus breached the contract.

Under California law, a claim for breach of contract includes four elements: that a contract exists between the parties, that the plaintiff performed his contractual duties or was excused from nonperformance, that the defendant breached those contractual duties, and that plaintiff's damages were a result of the breach. Reichert v. General Ins. Co., 68 Cal. 2d 822, 830 (1968); First Commercial Mortgage Co. v. Reece, 89 Cal. App. 4th 731, 745 (2001). A claim for breach of the implied covenant of good faith and fair dealing requires the same elements, except that instead of showing that defendant breached a contractual duty, the plaintiff must show, in essence, that defendant deprived the plaintiff of a benefit conferred by the contract in violation of the parties'

expectations at the time of contracting. <u>Carma Developers, Inc.</u>
<u>v. Marathon Development California, Inc.</u>, 2 Cal. 4th 342, 372-73
(1992).

For purposes of this motion, defendant does not dispute the
existence of a contract, plaintiff's performance, or damages.
Defendant seeks summary judgment on the ground that the contract
and applicable covenant did not bar defendant from selling directly
to retailers, and alternatively on the ground that any termination
of the contract was permissible.  The court denies defendant's
motion on both grounds.

**1.  Whether Defendant Could Sell Directly to Dealers under**
**The Contract**

**a.  The Contract's Express Terms**

Plaintiff argues that the contract expressly prohibited
defendant from selling directly to retailers.[6]  Defendant argues
that plaintiff is barred from making this argument because the
complaint failed to allege this prohibition.  Defendant

---

[6] Plaintiff also implies that defendant breached the agreement
by raising the price charged to plaintiff, in addition to lowering
the prices ultimately charged to retailers.  No evidence indicates
that the prices paid by plaintiff were raised, or that any increase
would have been a breach of the contract.

Plaintiff's complaint also alleges that Hagen breached the
agreement by "refus[ing] to accept the return of the Disputed
Inventory, or to refund the purchase price paid by plaintiff for
the Disputed Inventory." Compl. ¶ 33.  Plaintiff does not discuss
this allegation in opposing this motion, and has provided no
evidence indicating that any term of the agreement pertained to an
obligation to repurchase or refund this inventory.  The court
therefore grants summary adjudication to defendant as to whether
the contract contained any such express terms. As explained below,
however, defendant's asserted refusal to accept the merchandise may
nonetheless be significant.

alternatively argues that plaintiff has provided no admissible evidence that the contract included this prohibition.

Defendant's first argument is that a plaintiff must plead the essential terms of a contract, and that plaintiff cannot seek to enforce essential terms not alleged in the pleading. Under the federal rules, a "plaintiff may set forth the contract verbatim in the complaint or plead it, as indicated, by exhibit, or plead it according to its legal effect." Fed. R. Civ. P. Official Form 3, 12; see also Fed. R. Civ. P. 84 (declaring these forms to be sufficient). Here, although plaintiff's complaint is inartful, plaintiff alleged that defendant "willfully breached the express and implied terms" of the contract by "refus[ing] to cease its unfair and unlawful solicitation [of] and direct dealing with plaintiff's independent retailer customers." Compl. ¶ 33. Plaintiff therefore alleged that the contract prohibited Defendant from selling directly to customers, sufficiently putting defendant on notice as to this basis for plaintiff's claim.[7]

---

[7] In briefing this argument, defendant cites solely state authority, e.g., Twaite v. Allstate Ins. Co., 216 Cal. App. 3d 239, 252 (1989) and Otworth v. Southern Pac. Transportation Co., 166 Cal. App. 3d 452, 458-459 (1985). California pleading requirements do not apply in federal court. Indeed, federal courts have routinely refused to apply Otworth in federal cases. See, e.g., Cayo v. Valor Fighting & Mgmt. LLC, No. C 08-4763, 2008 U.S. Dist. LEXIS 102866 *5-*6 (N.D. Cal. Dec. 9, 2008); Downtown Plaza LLC v. Nail Trix, Inc., No. C 08-cv-2001, 2008 U.S. Dist. LEXIS 97129, *3-*4 (E.D. Cal. Nov. 26, 2008); Kassa v. BP W. Coast Prods., LLC, No. C 08-02725, 2008 U.S. Dist. LEXIS 61668, *10 (N.D. Cal. Aug. 11, 2008), Wang & Wang, LLP v. Banco Do Brasil, S.A., No. C S-06-00761, 2007 U.S. Dist. LEXIS 25813, *7-*8 (E.D. Cal. Mar. 26, 2007), Securimetrics, Inc. v. Hartford Cas. Ins. Co., No. C 05-00917, 2005 U.S. Dist. LEXIS 44893 *6 (N.D. Cal. July 21, 2005); but see Campbell v. Allstate Ins. Cos., No. CV 95-1171, 1995 U.S. Dist.

Defendant's next argument is that insufficient admissible evidence indicates that the contract contained such a term. Plaintiff provides the testimony of Sam Sarkissian, taken from both his deposition and a declaration. Sarkissian declares that "I was specifically assured that Hagen would not offer its products for sale directly to retailers in plaintiff's distribution area, or anywhere in the United States." Sam Decl. ¶ 8; see also Sam Depo. 30-31. Defendant argues that the court should disregard this evidence as implausible. The Ninth Circuit has held that "[i]f the factual context makes the non-moving party's claim implausible, then that party must come forward with more persuasive evidence than otherwise would be necessary to show that there is a genuine issue for trial." Blue Ridge Ins. Co. v. Stanewich, 142 F.3d 1145, 1149 (9th Cir. 1998) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) and California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1470 (9th Cir. 1987)). Implausibility is a high standard. See, e.g., Bator v. Hawaii, 39 F.3d 1021, 1026 (9th Cir. 1994), c.f. Stitt v. Williams, 919 F.2d 516, 523-524 (9th Cir. 1990). In Stitt, plaintiffs argued that they relied on defendant's promises in delaying to file suit, thereby invoking an equitable estoppel argument. Id. at 523. The Ninth Circuit held it was implausible to conclude that any reliance on these promises was reasonable when defendant had failed to keep these promises year after year. Id.

LEXIS 21849 *7 (C.D. Cal. May 17, 1995).

Summary judgment must be denied, however, where a jury *could* return a verdict for the non-moving party.  <u>United States ex rel. Anderson v. Northern Telecom</u>, 52 F.3d 810, 815 (9th Cir. 1995).  Here, although a jury could certainly disbelieve Sam Sarkissian's testimony, his testimony is not so implausible that a jury would, as a matter of law, be compelled to do so.

Nor is this a case where the non-moving party has offered "sham" testimony.  "[A] court may disregard a 'sham' affidavit that a party files to create an issue of fact by contradicting the party's prior deposition testimony."  <u>Leslie v. Grupo ICA</u>, 198 F.3d 1152, 1157 (9th Cir. 1999).  Here, Sam Sarkissian's affidavit is consistent with his prior deposition testimony.

In sum, a jury could find that the agreement included a term prohibiting Hagen from selling directly to dealers.

### b.    Implied Covenant of Good Faith and Fair Dealing

Plaintiff's opposition does not make any mention whatsoever of the good faith claim.  However, the court cannot grant summary judgment simply for the non-moving party's failure to oppose the motion.  <u>Martinez v. G.D. Stanford</u>, 323 F.3d 1178, 1182 (9th Cir. 2003), <u>Rogstad v. North Slope Borough</u>, 126 F.3d 1224, 1227 (9th Cir. 1997).

Under California law, every contract carries with it an implied covenant of good faith and fair dealing.  <u>Carma Developers</u>, 2 Cal. 4th at 371 (noting that this duty is also recognized by most other jurisdictions, the restatement, and the Uniform Commercial Code).  This duty requires contracting parties to exercise

14

discretion given to them under the contract in a way consistent with the parties' expectations at the time of contracting. Id. at 372-73. A party breaches this duty when it acts in a way that deprives another contracting party of benefits conferred by the contract. Such a breach does not require subjective bad faith or a breach of the contract's express terms. Id. at 373. Because this duty serves to protect the reasonable expectations bargained for under the contract, the contours of this duty can be modified by the parties at the time of contracting. Id. at 374.

In some cases, courts have determined as a matter of law the scope of the covenant as implied by a particular contract. See, e.g., id. at 376. It appears to the court that in the context of an oral contract whose terms are uncertain, however, the scope of the implied duty must be determined by the trier of fact. C.f. San Francisco Brewing Corp. v. Bowman, 52 Cal. 2d 607, 614 (1959) (whether an oral contract contained an implied term is a jury question). This is especially so in light of the fact that the parties may modify the scope of the covenant's terms by, e.g., explicitly permitting certain actions. Carma Developers, 2 Cal. 4th at 374. Thus, determination of the contract's terms must precede determination of the covenant's scope. Accordingly, the scope of the covenant here must be an issue for the trier of fact, if in fact a contract existed.

## 2. Termination of the Contract

If the contract prohibited defendant from selling directly to dealers (either through a term of the contract itself or through

the implied covenant), defendant's letter announcing the HagenDirect program constituted a repudiation of the contract. The court therefore turns, employing summary judgment standards, to whether such termination was permissible. Specifically, the court addresses the conditions under which the contract could be repudiated and whether those conditions were satisfied. As explained below, a jury could conclude that reasonable notice was required prior to termination and that defendant failed to provide such notice.

### a. Conditions for Termination

Defendant argues that the contract was terminable at will, while plaintiff argues that the contract could be terminated only if plaintiff ceased to use "best efforts" to promote Hagen products. The cases cited by the parties disclose a third possibility, that the contract was terminable for cause at any time or at will upon reasonable notice. For the reasons explained below, the court rejects plaintiff's argument that the contract was terminable only for cause. A jury could find that the contract, if any, was terminable at will, or that it was terminable either for cause or upon reasonable notice.

Plaintiff argues that the contract was only terminable for cause, such that it would continue so long as plaintiff used "best efforts" to promote Hagen products. Whether plaintiff actually used best efforts is discussed below. As to the antecedent issue of whether the contract was at will, plaintiff primarily relies upon the testimony of Sam Sarkissian:

> While I never specifically discussed
> termination of the distribution agreement
> which is the subject of this action . . . with
> representatives of defendant Hagen, the
> understanding reached at the outset of the
> distribution relationship . . . was that the
> relationship would continue as long as
> plaintiff continued to use its best efforts to
> promote and solicit the sale of Hagen's
> products, and in fact distributed Hagen
> products throughout S&S Supplies' market area.

Declaration of Sam Sarkissian, ¶ 7; see also Pl.'s Additional Fact 21.

The court evaluates this evidence, and the question of duration generally, under the framework found in Zee Medical Distrib. Ass'n v. Zee Medical, 80 Cal. App. 4th 1 (2000). Zee Medical articulated a three step process for determining a contract's duration. "The court first seeks an express term. If one is absent, the court determines whether one can be implied from the nature and circumstances of the contract. If neither an express nor an implied term can be found, the court will generally construe the contract as terminable at will." Id. at 10 (citing Consolidated Theatres, Inc. v. Theatrical Stage Employees Union, 69 Cal. 2d 713, 727-28 (1968)).[8]

_____

[8] Zee Medical adopted this test after an extensive review of California caselaw. Over two full pages of plaintiff's opposition memorandum consist of direct, albeit unattributed, quotation of this review, but plaintiff does not discuss the above test. Similarly, while the cited cases place considerable emphasis on the distinction between express and implied terms, plaintiff does not specify whether the parties' "understanding" was expressed or implied.

Defendant, meanwhile, argues that the Zee Medical analysis-- and in particular its second step, taken from Consolidated Theatres--applies only to exclusive sales contracts and to labor

Here, no evidence indicates that the "understanding" Sam attests to was the result of an express discussion.  Sam instead concedes that the parties did not discuss termination.  Thus the contract did not contain an express term as to duration.

Absent an express term, "it is first necessary to determine whether the intention of the parties as to duration can be implied from the nature of the contract and the circumstances surrounding it."[9]  Consolidated Theatres, 69 Cal. 2d at 725.  For written contracts, this determination is a question of law for the court.  Id. at 725, 728, 730 (implicitly deciding the issue as a matter of law); see also Waller v. Truck Ins. Exchange, 11 Cal. 4th 1, 18 (interpretation of written contracts a question of law), 1 Witkin, Summary 10th Contracts § 741 (2005).  For oral contracts, however, the California Supreme Court has held that whether the contract contains an implied term as to duration is a question for the jury.

---

agreements, and therefore does not apply to this case.  Consolidated Theatres itself refutes this argument, as it based its conclusion in part on Town of Readsboro v. Hoosac Tunnel & W. R. Co., 6 F.2d 733 (2d Cir. 1925), which concerned a railroad's obligation to pay a town for bridge maintenance, and wherein the court looked to the parties' intent regarding duration.  69 Cal. 2d at 725.  Consolidated Theatres also favorably cited J. C. Millett Co. v. Park & Tilford Distillers Corp., 123 F. Supp. 484, 490, 493 (N.D. Cal. 1954), which engaged in a similar analysis in the context of a non-exclusive sales agreement.  Thus, nothing indicates that a court should only seek to divine the parties' intent when a sales agreement is exclusive.  Whether exclusivity provides an indication as to the content of the parties' intent is a separate question, discussed below.

[9] The California opinions cited herein have not explained the distinction, if any, between implied contractual terms and obligations imposed by the implied covenant of good faith and fair dealing.

18

San Francisco Brewing Corp. v. Bowman, 52 Cal. 2d 607, 614 (1959). Accordingly, the court asks what implied terms could reasonably be found by a trier of fact here.

Plaintiff contends that the contract contained an implied term prohibiting termination except for cause. The court is aware of only a single California case holding that a contract contained such an implied term. Zinn v. Ex-Cell-O Corp., 148 Cal. App. 2d 56, 73-74 (1957). In Ex-Cell-O, plaintiffs formed a corporation that was to serve as the first and exclusive west coast distributor for milk packaging machines. Id. at 73. The parties entered into a detailed agreement, which specified definite times for accomplishment of certain placements of machines, payment of royalties over a two-year period, and payment of other royalties "during the life of this agreement." Id. at 73-74. The agreement further directed plaintiffs to form and fund a new corporation solely to conduct the distribution. Id. at 61. In light of all these factors, the court concluded that "[t]he very nature and size of the undertaking which burdened [the distributor] once [it] executed the agency contract indicates that there was no intention that it should be terminable at will." Id. at 74.

After Ex-Cell-O was decided, the California Supreme Court announced in Consolidated Theatres that as a general rule, "exclusive sales agency and distributorship contracts" without an express term of duration shall last "at least a reasonable time, and that the obligations under the contract shall be terminable at will by any party upon reasonable notice after such a reasonable

time has elapsed." <u>Consolidated Theatres</u>, 69 Cal. 2d at 727-28; <u>see also</u> <u>Alpha Distributing Co. v. Jack Daniel Distillery, Lem Motlow, Prop., Inc.</u>, 454 F.2d 442, 449 (9th Cir. 1972) (applying this rule).[10]  While plaintiff cites several cases other than <u>Ex-Cell-O</u> in which a contract was found to be terminable only for cause, each of these cases concerned an *express* contract provision.[11]

The Ninth Circuit's decision in <u>Alpha Distributing</u> illustrates application of the <u>Consolidated Theatres</u> rule.  Plaintiff Alpha Distributing contracted to be the exclusive regional distributor for Jack Daniel's whiskey.  454 F.2d at 446.  In addition to purchasing and selling products, Alpha "supplied local advertising, sales aids, sampling and other promotional and sales activities and support," including its own "sales executive as 'brand manager' of Jack Daniel's whiskeys, a function customarily carried out by distillers in aid of their distributors."  <u>Id.</u>  The opinion did not specify whether these activities were specifically required under the contract.  The Ninth Circuit held that these facts were

---

[10] <u>Consolidated Theatres</u> described the reasonable notice rule as applying when the nature of the contract provided no evidence as to an implied term, but it may be more accurate to say that the nature of exclusive sales contracts in general will imply the above rule.

[11] <u>See</u> <u>Auto Equity Sales, Inc. v. Superior Court</u>, 57 Cal. 2d 450 (1962), <u>Long Beach Drug Co. v. United Drug Co.</u> 13 Cal. 2d 158 (1939), <u>Great Western etc. v. J.A. Wathen D. Co.</u>, 10 Cal. 2d 442 (1937), <u>Burgermeister Brewing Corp. v. Bowman</u>, 227 Cal. App. 2d 274, 283 (1964) <u>Mangini v. Wolfschmidt, Ltd.</u>, 192 Cal. App. 2d 64 (1961).

sufficient to warrant application of the <u>Consolidated Theatres</u> "reasonable notice" rule, but that they did not imply any longer term of duration. <u>Id.</u> at 449.

While <u>Consolidated Theatres</u> referred to exclusive distribution agreements, the reasonable notice rule can also apply to non-exclusive agreements. The Court in <u>Consolidated Theatres</u> favorably cited <u>J. C. Millett Co. v. Park & Tilford Distillers Corp.</u>, 123 F. Supp. 484 (N.D. Cal. 1954), which held that a non-exclusive distribution agreement implicitly provided that termination could only be after reasonable notice. <u>Consolidated Theatres</u>, 69 Cal. 2d at 728 n.13 (citing <u>J.C. Millett</u>, 123 F. Supp. at 492). In <u>J. C. Millett</u>, as in this case, the distribution agreement was not exclusive in any way. Plaintiff liquor distributor carried both defendant and other manufacturer's products, and defendant sold products both to plaintiff and to another distributor operating in the same region. 123 F. Supp. at 490. After a bench trial, <u>Millett</u> held that California's reasonable notice rule applied because the plaintiff "[bought defendant's] products, took title to them and thus assumed the risk of their destruction, maintained warehouse facilities and tied up a substantial amount of its capital in inventory and accounts receivable." <u>Id.</u> at 493. The court went on to weigh the magnitude of these particular expenses in determining what period of time was reasonable. <u>Id.</u>

While the court is not aware of any California decision discussing implied duration of a non-exclusive distribution contract, California opinions discussing exclusive distribution

agreements are consistent with the federal court's decision in J.
C. Millett.  Consolidated Theatres explained the justification for
the   reasonable   notice   requirement   in   exclusive   distribution
contracts as follows:

> When the obligor has expended a substantial
> sum of money or value or has substantially
> rearranged his business . . . preparatory to
> engaging upon the terms of agreement for the
> benefit   of   obligee,   he   ought,   through
> fairness, to have a reasonable time and notice
> of the cancellation of the contract in order
> that he might have a reasonable opportunity to
> put his house in order.

Consolidated Theatres, 69 Cal. 2d at 728 n.13 (quotations omitted)
(citing J. C. Millett, 123 F. Supp. at 492, Bowman, 52 Cal.2d at
613-14, Connelly v. Venus Foods, Inc., 174 Cal. App. 2d 582, 586-87
(1959)).  Thus, the purpose of the rule is to allow the obligor an
opportunity to recoup expenses made in execution of the contract.
While   such   expenses   will   often   be   a   factor   in   exclusive
distribution agreements, they may also arise in non-exclusive
agreements.

Turning at last to the facts of this case, plaintiff argues
that it "expended substantial sums in purchasing, warehousing,
promoting and selling Hagen products."  Sam Decl. ¶ 4.  These
expenses purportedly included expanding a warehouse, moving to a
different warehouse, increasing sales staff, and purchasing trucks.
Sam  Depo.  60,  62,  65-66.[12]   Plaintiff  acknowledges  that  the

_____

[12] The cited deposition pages are the only evidence offered by
plaintiff in support of these assertions.  However, plaintiff has
failed to include all of these pages in the excerpt provided to the
court.

contract did not expressly require any of these activities. Sam Depo. 74. Nor does any evidence in the record indicate to what extent these expenditures were incurred specifically to accommodate Hagen products, rather than as a result in the expansion of plaintiff's business generally. Although plaintiff further argues that the "understanding reached at the outset of the distribution relationship . . . was that the relationship would continue as long as plaintiff continued to use its best efforts to promote and solicit the sale of Hagen's products," the court disregards this testimony. Sam Decl. ¶ 7. While the parties' intent is the ultimate issue in the Zee Medical/Consolidated Theatres inquiry, plaintiff has provided no foundation as to Sam's knowledge of defendant's intent, nor is there any evidence indicating that defendant was aware of plaintiff's understanding. Fed. R. Evid. 601. Sam may properly testify as to his own understanding, but this testimony is irrelevant, because a promisee may not bind a promisor to the promisee's private understanding of the promise.

On these facts, it is clear that even if Ex-Cell-O remains good law--which the court does not decide--no trier of fact could find it satisfied here. See Alpha Distributing, 454 F.2d at 446, 449. Thus, the contract could be terminated without good cause. Plaintiff has raised a triable question as to whether plaintiff "expended a substantial sum of money or value or has substantially rearranged his business" in connection with the contract, such that the contract, if not terminated for cause, could only be terminated after a reasonable time and with reasonable notice. Consolidated

<u>Theatres</u>, 69 Cal. 2d at 728 n.13.

**b.    Whether The Conditions for Termination Were Satisfied**

For the reasons stated above, material questions exist as to whether the contract was (a) terminable at will, or (b) terminable either for cause or upon reasonable notice and after a reasonable time.  If the jury finds the latter, the jury could also find both that good cause did not exist and that defendant failed to provide required reasonable notice.

**i.    Termination for Cause: "Best Efforts"**

Plaintiff argues that the contract would last so long as plaintiff used best efforts to sell defendant's products.  Although the court rejects plaintiff's argument that this was the only situation in which termination was permitted, the parties agree that even if the contract was not at will, it could be terminated at any time--regardless of notice--if plaintiff failed to use best efforts.

The parties disagree as to what "best efforts" were required. Defendant argues that "best efforts" required plaintiff to promote defendant's products over other products.   The evidence demonstrates that plaintiff did not engage in such promotion.  Sam. Depo. 32-35.  Plaintiff instead argues that "best efforts" did not require such preferential treatment, although plaintiff has not proffered an alternate definition of the phrase.

Plaintiff is hampered by the fact that Sam Sarkissian, in his deposition, stated that plaintiff agreed to "push the Hagen

[products] first," thereby supporting defendant's position. Sam attempts to retreat from this statement in a declaration, stating that the contract did not require plaintiff "to promote Hagen's products before promoting products from other manufacturers." Sam. Decl. ¶ 9. Insofar as this declaration contradicts Sam's deposition testimony, it is a sham and is disregarded. Leslie, 198 F.3d at 1157.

Other evidence, however, provides some support for plaintiff's position. Defendant's witness Dieter Hagen was asked in his deposition "what kind of support were you looking for in your distributors?", to which he answered "That they give us a good representation of our total product mix." Deposition of Dieter Hagen, 48. Dieter's deposition testimony indicates that defendant did not believe that plaintiff, or any other distributor, was expected to promote Hagen over other manufacturers. Dieter's apparent belief such promotion was not required is unsurprising, given defendant's contention that no contract existed whatsoever. Nonetheless, for this motion, defendant concedes that a contract existed. In light of this concession, there is some evidence which would enable a jury to conclude that any contract that existed did not require plaintiff to promote defendant's products over other manufacturers. Defendant has not argued that plaintiff otherwise failed to use best efforts, although it is difficult to know what the phrase means. Accordingly, there is question sufficient to deny summary judgment as to whether good cause existed to terminate the agreement.

### ii.  Termination after Reasonable Notice

If the contract was not at will, and if there was not good cause to terminate the contract, defendant could nonetheless terminate the contract after "reasonable notice."  The parties have not briefed this issue.

Here, although reasonable notice has not been precisely defined, reasonable notice must at the least provide a distributor a reasonable opportunity to avoid losing money on already-ordered products.  A jury could find that the notice provided by defendant did not do so.  Because retailers learned of the program at the same time as plaintiff, plaintiff may have immediately lost the ability to sell to retailers at a profit.  Although defendant offered to accept returns of products, this offer was contingent on payment of a 10 percent restocking fee and return shipping costs.  A jury could find that the provided notice was unreasonable.[13]

### 3.  Declaratory Relief

Because there are material questions as to plaintiff's breach of contract and fair dealing claims, there are also material questions as to plaintiff's claim for a declaratory judgment as to the parties' rights under the contract.

### 4.  Summary of Contract Claims

The court denies defendant's motion for summary judgment as

_____

[13]  Nonetheless, under such circumstances, plaintiff was required to mitigate its damages which might well mean taking defendant's offer but reserving the right to sue for the stock shelving fee and the cost of transportation.

to the breach of contract, breach of the covenant of good faith and fair dealing, and declaratory judgment claims. The court grants partial summary adjudication, however, determining that at most, defendant breached the contract by failing to provide reasonable notice prior to termination. To clarify future proceedings, the court explains what plaintiff will need to show to succeed on these claims. Plaintiff will need to show all of the following:

- that an enforceable contract exists

- that either the contract terms or the implied covenant prohibited defendant from selling directly to dealers.

- that the contract did not require plaintiff to use "best efforts" to market defendant's products over other manufacturers'.

- that plaintiff's actions taken in connection with the contract are the sort that imply that termination of the contract without cause required reasonable notice.

- that the notice of termination provided by defendant was unreasonable.

- that plaintiff performed its obligations under the contract

- that plaintiff suffered damages as a result of defendant's breach.

The motion for summary judgment is denied because for each of these issues, defendant has not sought summary judgment or the court has determined that a triable question exists. Because the breach consisted of, at most, failing to provide reasonable notice prior to termination, damages for the contract claims are limited to those attributable to the failure to provide that notice, rather than the decision to terminate the contract generally.

**B.   Trade Secrets Claims**

    **1.   California Uniform Trade Secrets Act**

The Uniform Trade Secrets Act, as adopted by California, provides that "[a] complainant may recover damages for the actual loss caused by misappropriation" of a trade secret. Cal. Civ. Code § 3426.3(a).[14] Plaintiff claims that defendant misappropriated proprietary information "to solicit business from, and establish competitive business and contractual relationships with," plaintiff's customers. Defendant seeks summary judgment as to this claim on the ground that defendant did not use any potential trade secrets.

The statute provides that

> "trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and
>
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d).

------------------------

[14] As used in this case, "misappropriation," is defined as "Disclosure or use of a trade secret of another without express or implied consent by a person who . . . (B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was: . . . . (ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or (iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use." § 3426.1(b)(2).

Plaintiff previously contended that its customer lists and certain other information constituted trade secrets, but plaintiff appears to have abandoned this position. In any event, plaintiff cannot claim that the names of businesses, the fact that they carry Hagen products, and the businesses' contact information are trade secrets misappropriated by defendant, as the undisputed evidence establishes that defendant was aware of this information from other sources. Cal. Civ. Code § 3426.1(d)(1). Although defendant may not have otherwise known which retailers were specifically plaintiff's customers, no evidence indicates that defendant made any use of the fact that some retailers purchased Hagen products from plaintiff specifically.[15]

Plaintiff's remaining contention is that the dollar value of Hagen products plaintiff distributed to retailers is a trade secret, and that defendant misappropriated this information. Opp'n, 16. Assuming that this information constitutes a trade secret, no evidence indicates that defendant used or otherwise misappropriated this information. The HagenDirect program was offered to all retailers carrying Hagen products. Nothing indicates that defendant used retailers' sales figures (from plaintiff or otherwise) in deciding whether to implement HagenDirect generally, to whom to offer the program, in any

---

[15] Sam Sarkissian declares that defendant "utilized plaintiff's Proprietary Information to solicit and contract directly with plaintiff's independent retailer customers." Sam Decl. ¶ 12. Because this statement is devoid of factual detail and foundation, the court disregards it. Fed. R. Evid. 601; Schneider v. TRW, Inc., 938 F.2d 986, 991 n.3 (9th Cir. 1991).

marketing effort, etc.

Accordingly, the court grants summary judgment as to this claim.

**2.    Common Law Trade Secrets**

California's Uniform Trade Secrets Act "preempts common law claims that are 'based on the same nucleus of facts as the misappropriation of trade secrets claim for relief.'"   <u>K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.</u>, 171 Cal. App. 4th 939, 958 (2009) (quoting <u>Digital Envoy, Inc. v. Google, Inc.</u>, 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005)); Cal. Civ. Code § 3426.7(b).  Here, plaintiff's common law trade secrets claim is plainly preempted.

**C.    Unfair Competition**

California's unfair competition law ("UCL") proscribes business acts or practices that are "unlawful, unfair or fraudulent."  Cal. Bus. & Prof. Code § 17200.  Here, plaintiff offers no argument or legal theory as to how defendant violated the UCL.  <u>See</u> Opp'n 21-22.

Absent any legal theory, the court grants summary judgment as to this claim insofar as it is predicated on unfair or fraudulent acts.  As to unlawful acts, the UCL "borrows" violations of other laws.  Elsewhere in this order, the court grants defendant's motion for summary judgment as to all but plaintiff's contract claims. A breach of contract, and by extension, a breach of the implied covenant of good faith and fair dealing, is not itself an unlawful act for purposes of the UCL.  <u>Puentes v. Wells Fargo Home Mortgage,</u>

_Inc._, 160 Cal. App. 4th 638, 645 (2008) (quoting _Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc._, 178 F. Supp. 2d 1099, 1118 n.12 (C.D. Cal. 2001)). "Contractual duties are voluntarily undertaken by the parties to the contract, not imposed by state or federal law." _Smith v. Wells Fargo Bank, N.A._, 135 Cal. App. 4th 1463, 1484 (2005) (internal modification omitted) (quoting _Gibson v. World Savings & Loan Assn._, 103 Cal. App. 4th 1291, 1302 (2002)). An act that breaches a contract may also breach the UCL, but only when the act is unfair, unlawful of fraudulent for some additional reason. _Id._ at 1483. Here, plaintiff has not provided evidence of, or even alleged, the requisite additional wrongfulness.

## D. Intentional Interference with Contractual Relationship

A claim for intentional interference with contractual relations requires "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." _Quelimane Co. v. Stewart Title Guaranty Co._, 19 Cal. 4th 26, 55 (1998) (quoting _Pacific Gas & Electric Co. v. Bear Stearns & Co._, 50 Cal. 3d 1118, 1126 (1990)).

Here, no evidence indicates that any third party breached a contract with plaintiff. Plaintiff admits that there were no contracts between plaintiff and retailers which prohibited retailers from buying Hagen products from other sources. Def.'s UF 46. More generally, there are no ongoing contracts whatsoever

31

between plaintiff and any retailer. Plaintiff contends that "each completed sale of a Hagen product to one of plaintiff's retailers constitutes a completed contractual transaction," Opp'n at 20. This may be so, but no evidence indicates that any retailer had contracted to buy Hagen products from plaintiff but then failed to do so. The court grants summary judgment as to this claim.

**E.    Intentional Interference with Prospective Economic Advantage**

The elements of a claim for intentional interference with prospective economic advantage are (1) "an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff;" (2) "the defendant's knowledge of the relationship;" (3) "intentional wrongful acts on the part of the defendant designed to disrupt the relationship;" (4) "actual disruption of the relationship;" and (5) "economic harm to the plaintiff proximately caused by the acts of the defendant." Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1153-54 (2003) (quotations omitted).[16]    For purposes of the third element, "an act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." Id. at 1159.

_____

[16] Korea Supply explained that traditionally, these elements were as above, except that wrongfulness was not required under the third element.  29 Cal. 4th at 1153.  In Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal. 4th 376, 393 (1995), the Court held that the tort required that defendant's acts be "wrongful by some legal measure other than the fact of interference itself." Korea Supply held that as a result, the traditional elements should be modified to read as above.  29 Cal. 4th at 1154.

Plaintiff argues that defendant acted unlawfully by breaching the distribution agreement and by misappropriating trade secrets. Opp'n, 21. As to trade secrets, plaintiff has not shown unlawfulness, and even if plaintiff had, the UTSA would preempt a claim brought on this basis. As to breach of the distribution agreement, as noted above, California courts have held that an breach of contract is not itself "unlawful" conduct for purposes of California's UCL, and these cases apply with equal force here.

**F.  Unjust Enrichment**

Plaintiff's ninth cause of action is for unjust enrichment. California courts disagree as to whether unjust enrichment may be brought as a separate cause of action, or instead merely provides a remedy for another claim, and this court recently adopted the latter view. See Hands on Video Svcs., Inc. v. Am. Sign Language Svcs. Corp., No. Civ. S-09-996, 31-32 (E.D. Cal. August 12, 2009). Regardless of whether brought as a separate cause of action, unjust enrichment requires "receipt of a benefit and the unjust retention of the benefit at the expense of another." Peterson v. Cellco Partnership, 164 Cal. App. 4th 1583, 1593 (2008) (quoting Lectrodryer v. Seoulbank, 77 Cal. App. 4th 723, 726 (2000)).

Here, restitution, as a form of unjust enrichment, may be available under the contract claims. The parties have not addressed this issue. The court grants summary judgment for defendant on this claim insofar as it is premised on defendant's use of plaintiff's purported confidential information or trade secrets.

## G. Injunctive Relief

Plaintiff's tenth claim requests an injunction prohibiting defendant from using plaintiff's trade secrets and proprietary information. Compl. ¶ 59. Injunctive relief, like restitution, is ordinarily a remedy rather than an independent cause of action. Pleading matters aside, plaintiff has failed to raise a triable question as to whether defendant has wrongfully used proprietary information.

In opposing this motion, plaintiff implies that it seeks an injunction against future breaches of the distribution agreement. Although material questions exist as to whether the agreement was wrongfully terminated, plaintiff has not shown that damages will be an insufficient remedy. Moreover, these damages, if any, will be limited to those resulting from failure to give proper notice of termination. There is no possibility of an ongoing violation.

Defendant's motion is therefore granted as to this claim.

## H. Punitive Damages

Plaintiff's remaining claims are all contract claims for which punitive damages are unavailable. Summary adjudication is appropriate as to this issue.

## IV. CONCLUSION

For the reasons stated above, defendant's motion for summary judgment, Doc. No. 16, is GRANTED IN PART. The court GRANTS summary judgment as to the first, second, third, sixth, seventh, and tenth claims. The court DENIES summary judgment as to the fourth (declaratory relief), fifth (breach of contract), eighth

1  (good faith), and ninth (unjust enrichment) claims.  These claims

2  may proceed to the extent consistent with the above order.

3      IT IS SO ORDERED.

4      DATED:  February 3, 2010.

5

6

7                              _____
                              LAWRENCE K. KARLTON
8                              SENIOR JUDGE
                              UNITED STATES DISTRICT COURT
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26