1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                    EASTERN DISTRICT OF CALIFORNIA

8

9  BOLAND, INC., a California
   corporation dba S&S SUPPLIES,
10                                        NO. CIV. S-08-2201 LKK/JFM
              Plaintiff,
11
         v.                               **PRETRIAL CONFERENCE ORDER**
12                                              **[TENTATIVE]**
   ROLF C. HAGEN (USA) CORP.,
13 and DOES 1 through 50,
   inclusive,
14
              Defendants.
15 _____/

16      Pursuant to court order, a Pretrial Conference was held in

17 Chambers on April 12, 2010.  CHRISTOPHER W. SWEENEY appeared as

18 counsel for plaintiff; LAWRENCE E. BUTLER and ANDREA K. ANAPOLSKY

19 appeared as counsel for defendants.  After hearing, the court makes

20 the following findings and orders:

21                   **I.   JURISDICTION/VENUE**

22      Jurisdiction is heretofore been found to be proper under 28

23 U.S.C. § 1332.  Venue is found to be proper under 28 U.S.C. §

24 1391(a).  Those orders are confirmed.

25                    **II.   JURY/NON-JURY**

26      The trial will be to the court.

                            1

1                **III.   UNDISPUTED FACTS**

2 A.   Undisputed Facts Relevant to all Causes of Action

3     1.   Defendant Rolf C. Hagen (USA) Corp. ("Hagen") is a

4 Massachusetts corporation.

5     2.   Hagen is a wholly-owned subsidiary of Rolf C. Hagen

6 Incorporated ("Parent Co.").

7     3.   Hagen is in the business of selling pet specialty

8 products within the U.S.

9     4.   Dieter Hagen joined Parent Co. in October 1959 and has

10 been an employee of Parent Co. since then.

11     5.   Dieter Hagen is on the Board of Directors of Parent Co.

12     6.   Dieter Hagen has been the Senior Vice President of Parent

13 Co. and all of its subsidiaries since the 1970s.

14     7.   Trevor Hagen, Dieter Hagen's son, worked for Parent Co.

15 from 1985 to 1991.

16     8.   Trevor Hagen worked for Hagen from February 1992 to

17 February 2008.

18     9.   Trevor Hagen was a regional sales manager for Hagen from

19 February 1992 to 2001.

20     10.   Trevor Hagen's duties as regional sales manager included

21 working with distributors and retailers in Southern California.

22     11.   Trevor Hagen was the general manger/COO of Hagen from

23 2001 to 2007.

24     12.   Trevor Hagen's obligation as general manager/COO was to

25 operate Hagen.

26     13.   Trevor Hagen developed the Gold Dealer program and the

2

1   Hagen Direct program.

2   14.   From the time Hagen started using U.S. distributors until
3   February 2007, Hagen generally offered distributors a discount
4   price based on volume

5   15.   The Board of Directors of Parent Co. approved the Hagen
6   Direct Program.

7   16.   Dieter Hagen participated in the Board's decision to
8   approve the Hagen Direct program.

9   17.   Trevor Hagen prepared and presented materials to the
10  Board of Directors of Parent Co. with respect to the Hagen Direct
11  program.

12  18.   Hagen formally launched Hagen Direct effective February
13  12, 2007.

14  19.   After the launch of Hagen Direct, all retailers and
15  distributors, including Plaintiff, were offered the same unified
16  pricing schedule and were free to purchase Hagen Products.

17  20.   After implementation of the Hagen Direct Program, Hagen
18  sold its products directly to retail customers that had formerly
19  worked through the distribution chain with Plaintiff.

20  21.   Plaintiff Boland Inc., dba as S&S Supplies ("Plaintiff"),
21  is a California corporation.

22  22.   Plaintiff's principal place of business is in Fairfield,
23  California.

24  23.   Plaintiff   is   a   distributor   of   pet   supplies   to
25  independently owned pet stores.

26  24.   Plaintiff has a distribution facility in Fairfield,

3

1 California.

2     25. Plaintiff leased a distribution facility in the State of
3 Washington starting in 2005.

4     26. Sam Sarkissian is the Plaintiff's Founder, President and
5 CEO.

6     27. Sam Sarkissian is on Plaintiff's Board of Directors.

7     28. Greg Sarkissian was Plaintiff's general manager from
8 January 2009 until approximately December 2009.

9     29. Linda Kusaka was Plaintiff's general manager from 2001
10 through November 2007.

11     30. Linda Kusaka was responsible for sending information to
12 Hagen with respect to the Gold Dealer Program.

13     31. Linda Kusaka sent Hagen the net dollar amounts for Hagen
14 products sold by Plaintiff to retailers.

15 B. Undisputed Factual Issues Relevant to Plaintiff's Breach of
16     Contract Claim

17     1. After 1993, Plaintiff sold products from other
18 manufacturers during the time it was distributing Hagen's
19 products.

20     2. Hagen sold its products to other distributors within the
21 same geographical region as Plaintiff.

22     3. Sam Sarkissian and Dieter Hagen never discussed
23 conditions for termination of any relationship between Hagen and
24 Plaintiff.

25     4. Hagen always established the pricing terms for the
26 products it sold to Plaintiff.

4

1    5.    Plaintiff had no right to and never did negotiate prices
2 with Hagen.

3    6.    Plaintiff requested that Hagen accept the return of the
4 "Disputed Inventory" and refund the price paid by plaintiff for the
5 products.

6    7.    After Hagen's implementation of the Hagen Direct program,
7 plaintiff did not purchase any additional products from Hagen for
8 distribution to its retail customers.

9                **IV.    DISPUTED FACTUAL ISSUES**

10 A.    Disputed Facts Relevant to All Causes of Action

11    1.    Whether or not, prior to February 2007, Hagen sold pet
12 specialty supplies primarily, but not exclusively, through
13 distributors in the United States.

14    2.    Whether or not, prior to February 2007, Hagen sold pet
15 specialty supplies products to the following retailers in the U.S.:
16 All  Pet, PetSmart, PetCo and Petlands.

17    3.    Whether or not Hagen decided to implement the Hagen
18 Direct Program because, like other manufactures, Hagen faced
19 shrinking margins, decreased volume, increased competition from
20 other manufactures that had gone direct, distributors "low-balling"
21 manufacturers' products, internet companies selling at cost or
22 below cost prices, and large retailers doing high volume, low cost
23 business and establishing their own brands.

24    4.    Whether or not, when Hagen decided to implement the Hagen
25 Direct Program, several publicly traded companies like PetSmart,
26 Petco, and the publicly traded Central Garden and Pet Company

                                5

1  (which not only manufactured and imported many major brands but
2  also used it's wholly owned national distribution network to
3  directly sell those brands into retail) had already been selling
4  direct to retailers.

5      5.   Whether or not Hagen decided to implement the Hagen
6  Direct Program because Hagen determined that within a few years of
7  continuing to do business with the distributor model, Hagen would
8  go bankrupt or forced to downsize to a level at which it would make
9  no sense to continue in business.

10     6.   Whether or not all of Hagen's distributors received a
11  copy of the letter attached as the only exhibit to Plaintiff's
12  Complaint filed on or about August 22, 2008 (the "Complaint").

13     7.   Whether or not at the beginning of the distribution
14  relationship, defendant's Vice President of Sales visited Sam
15  Sarkissian at his Richmond warehouse and offered plaintiff the
16  Hagen line of products. (Hagen comment: Not relevant.)

17     8.   Whether or not during the initial discussions regarding
18  the distribution agreement, Dieter Hagen told plaintiff that
19  defendant Hagen was a family owned company and that plaintiff would
20  be supported by Hagen and would "become like a family."  (Hagen
21  comment: Not relevant.)

22     9.   Whether or not during initial discussions, Dieter Hagen
23  was acting on behalf of the parent company Rolf C. Hagen, Inc. and
24  on behalf of defendant Rolf C. Hagen (USA) Corp.  (Hagen comment:
25  legal issue.)

26     10.  Whether or not defendant Hagen began distributing its

6

1  products in the United States in 1975. (Hagen's comment:
2  Irrelevant.)

3      11.  Whether or not Hagen sold its products through a
4  distribution model in the United States because the country was too
5  large of an area to sell direct to retailers. (Hagen's comment:
6  Irrelevant.)

7      12.  Whether or not at the time plaintiff became a distributor
8  of Hagen's products, Hagen was not selling or distributing its
9  products directly to retailers in plaintiff's distribution area.
10  (Hagen's comment: Irrelevant.)

11      13.  Whether or not prior to 2007, Hagen had a uniform pricing
12  schedule for all of its distributors, comprised of a distributor
13  price and a "suggested dealer" (or retailer) price. (Hagen's
14  comment: Irrelevant; Plaintiff concedes that Hagen controlled
15  pricing.  See I.B.4-5.)

16      14.  Whether or not pursuant to this pricing schedule, Hagen
17  would sell its products to its distributors for 1/3 of its
18  suggested dealer price, and would offer additional discounts to
19  distributors. (Hagen's comment: Irrelevant; Plaintiff concedes
20  that Hagen controlled pricing.  See I.B.4-5.)

21      15.  Whether or not Hagen expected its distributors to support
22  the product line and give a "good representation" of Hagen's total
23  product mix.

24      16.  Whether or not Hagen did not require its distributors to
25  distribute only Hagen products because this requirement would be
26  "impossible." (Hagen's comment: Irrelevant.)

7

1    17. Whether or not in order to remain economically viable,
2  Hagen's distributors had to distribute multiple manufacturers'
3  products that were competitive with each other. (Hagen's comment:
4  Irrelevant.)

5    18. Whether or not the Hagen company was a "family operation"
6  that had personal relationships with its distributors, including
7  plaintiff, that did business with its distributors "on a
8  handshake."

9    19. Whether or not Dieter Hagen had a "good relationship"
10  with Sam Sarkissian. (Hagen's comment: Irrelevant.)

11   20. Whether or not Trevor Hagen, Hagen's Chief Operating
12  Officer and general manager from 2001 to 2007, had "tremendous
13  respect for Sam as an independent businessman. (Hagen's comment:
14  Irrelevant.)

15   21. Whether or not over the years of the distribution
16  relationship between plaintiff and defendant Hagen, Dieter Hagen,
17  its' Vice President of Sales, never heard from anyone at Hagen that
18  the relationship was not profitable for Hagen. (Hagen's comment:
19  Irrelevant.)

20   22. Whether or not over the years of the distribution
21  relationship between plaintiff and defendant Hagen, Dieter Hagen,
22  its' Vice President of Sales, never heard from anyone at Hagen that
23  plaintiff had failed to fairly represent the Hagen line with its
24  dealers. (Hagen's comment: Irrelevant.)

25   23. Whether or not Hagen's decision to sell direct to
26  retailers pursuant to the Hagen Direct Program had anything to do

8

1  with plaintiff's performance as a distributor of Hagen's products.

2      24.   Whether or not, pursuant to the distribution agreement,
3  the parties agreed that the parties' distribution relationship
4  would continue as long as plaintiff continued to use its best
5  efforts to promote and solicit the sale of Hagen's products, and
6  in fact distributed Hagen products throughout S&S Supplies' market
7  area through plaintiff's distribution facilities.

8      25.   Whether or not over the 15 years of the parties'
9  distribution relationship pursuant to the Distribution Agreement,
10 plaintiff purchased and distributed over $8,000,000.00 of Hagen
11 products to its retail customers.  (Hagen's comment: Irrelevant.)

12     26.   Whether or not, after entering into the Distribution
13 Agreement with Hagen, plaintiff expanded its Richmond, California
14 warehouse by an additional 7000 square feet to accommodate the
15 Hagen inventory and ultimately relocated to a larger 50,000 square
16 foot warehouse in Fairfield, California.

17     27.   Whether or not after entering into the Distribution
18 Agreement with Hagen, plaintiff increased its sales force and
19 purchased additional trucks to facilitate the promotion and
20 distribution of Hagen products.

21     28.   Whether or not, throughout the entirety of the
22 distribution relationship up until Hagen implemented the Hagen
23 Direct Program and offered its products directly to retailers of
24 plaintiff, plaintiff promoted Hagen's products and provided
25 distribution facilities in California and Washington over a total
26 of more than 15 years, and successfully marketed and sold Hagen's

9

1 | products throughout its distribution area.

2 | 29. Whether or not plaintiff took these actions with the
3 | express understanding and agreement that Hagen would continue to
4 | supply and ship its products to plaintiff for distribution to
5 | plaintiff's retail customers throughout its market area in
6 | California and the western United States.

7 | 30. Whether or not plaintiff was informed by defendant Hagen,
8 | or required under the Distribution Agreement to promote Hagen's
9 | products before promoting products from other manufacturers. Nor
10 | was plaintiff ever notified or required by Hagen to instruct
11 | plaintiff's salespeople to promote Hagen products ahead of
12 | competing product lines.

13 | 31. Whether or not the only remaining distribution of Hagen
14 | products by plaintiff after implementation of the Hagen Direct
15 | program, was the attempted distribution and sale of remaining Hagen
16 | inventory in plaintiff's warehouse facilities.

17 | 32. Whether or not after implementation of the Hagen Direct
18 | Program, Hagen opened a 120,000 square foot distribution facility
19 | in California in April 2007; prior to that time, Hagen had no
20 | distribution facility west of the Mississippi River. (Hagen's
21 | comment: irrelevant.)

22 | 33. Whether or not after implementation of the Hagen Direct
23 | Program, Hagen "wouldn't be doing [its] job" if at least one of
24 | plaintiff's retail customers didn't receive products directly from
25 | Hagen. (Hagen's comment: irrelevant.)

26 | 34. Whether or not over the course of Trevor Hagen's duties

10

1 as COO of Hagen, he ever recommended to anyone at the company that
2 Hagen stop distributing its products through plaintiff. (Hagen's
3 comment: irrelevant.)

4 B. Disputed Facts Relevant to Plaintiff's Breach of Contract and
5 Breach of the Covenant of Good Faith and Fair Dealing Claims
6 1. Whether or not any agreement was reached between
7 Plaintiff and Hagen, which included terms as alleged by Plaintiff
8 in its Complaint.

9 2. Whether or not, assuming an agreement was reached between
10 Plaintiff and Hagen, the agreement was reached in 1993.

11 3. Whether or not, Dieter Hagen was involved in the
12 selection of new distributors in the United States.

13 4. Whether or not, Dieter Hagen negotiated any contract with
14 Sam Sarkissian.

15 5. Whether or not, Trevor Hagen was involved in negotiating
16 the terms of any distribution relationships during the time in
17 which he was a regional sales manager.

18 6. Whether or not, Trevor Hagen was involved with
19 negotiating the terms of any distribution relationship between
20 Hagen and Plaintiff.

21 7. Whether or not, the general manager of Hagen, Joseph
22 Sesnovich, and/or his successor, Robert Baskinger, were responsible
23 for selecting distributors in the United States.

24 8. Whether or not distributors were under any obligation to
25 Hagen to pass the discount that the distributor received from Hagen
26 to the retailer.

11

9. Whether or not Distributors were free to sell Hagen products to retailers at any price they chose.

10. Whether or not, assuming an agreement was reached between Plaintiff and Hagen, the agreement included a term requiring Hagen never to sell directly to retailers in the United States.

    a. Whether or not, assuming there was an agreement which included a term requiring Hagen never to sell directly to retailers in the United States, Plaintiff agreed to a mutually binding obligation

    b. Whether or not, assuming there was an agreement which included a term requiring Hagen never to sell directly to retailers in the United States, and assuming that Plaintiff agreed to a mutually binding obligation, Plaintiff complied with that obligation.

11. Whether or not, assuming an agreement was reached between Plaintiff and Hagen, it was also a term of the agreement that the agreement would continue as long as Plaintiff used its "best efforts" to promote and solicit the sale of Hagen's products, and in fact distributed Hagen's products.

    a. Whether or not, assuming there is an agreement between Hagen and Plaintiff, Plaintiff fully performed its obligations under the so-called agreement, which Plaintiff has alleged in the Complaint was to use its best efforts to promote and sell Hagen's products.

    b. Whether or not, assuming there was an agreement which included a term requiring Plaintiff to promote Hagen's

12

1 products, the parameters of Plaintiff's obligations in promoting
2 these products was discussed and agreed to by Hagen and Plaintiff.

3      c.   Whether or not, assuming there was an agreement
4 which included a term requiring Plaintiff to incur expense in
5 promoting Hagen products, Plaintiff actually incurred such expense
6 specific to Hagen products.

7      12.  Whether or not, assuming there was an agreement,
8 Plaintiff promoted competing product lines ahead of Hagen's
9 products.

10      13.  Whether or not Hagen contributed to Plaintiff's costs to
11 promote/market Hagen products.

12      14.  Whether or not, assuming an agreement was reached between
13 Plaintiff and Hagen, it was also a term of the agreement that
14 Plaintiff must open a warehouse in the Northwest region of the
15 United States.

16      15.  Whether or not, assuming an agreement was reached between
17 Plaintiff and Hagen, it was also a term of the agreement that
18 Plaintiff must expand its facilities.

19      16.  Whether or not, assuming there was an agreement which
20 included a term requiring Plaintiff to either expand its facilities
21 or open a new facility, the timing, location, size, and expense
22 related to such expansion and facility was discussed and agreed to
23 by Hagen and Plaintiff.

24      17.  Whether or not Hagen advised Sam Sarkissian that
25 expansion into the Northwest region of the United States would be
26 costly and possibly detrimental to Plaintiff's business.

1    18.   Whether or not, assuming an agreement was reached between
2 Plaintiff and Hagen, it was also a term of the agreement that
3 Plaintiff disclose its trade secrets to Hagen.

4    19.   Whether or not, assuming there is an agreement between
5 Hagen and Plaintiff, and assuming that Plaintiff performed its
6 obligations under the agreement, the letter attached to Plaintiff's
7 Complaint establishes that Hagen terminated the agreement.

8    20.   Whether or not, assuming there is an agreement between
9 Hagen and Plaintiff, assuming that Plaintiff performed its
10 obligations under the agreement, and assuming that the letter
11 attached to Plaintiff's Complaint establishes that Hagen terminated
12 the agreement, the agreement was terminable-at-will.

13    21.   Whether or not, in February, 2007 Hagen launched its
14 Hagen Direct Program, which provided a unified pricing system for
15 distributors and retailers in the United States.

16    22.   Whether or not, retailers which purchased Hagen products
17 from Plaintiff, could purchase those same products from other
18 distributors during the time retailers purchased from Plaintiff.

19    23.   Whether or not some distributors continued to buy Hagen
20 products after the launch of Hagen Direct.

21    24.   Whether or not, assuming there is an agreement between
22 Hagen and Plaintiff, and assuming that Plaintiff performed its
23 obligations under the agreement, Hagen breached the agreement by
24 offering all retailers and distributors, including Plaintiff, the
25 same pricing schedule to purchase Hagen products after the launch
26 of the Hagen Direct program.

14

1    25.   Whether or not the pricing terms for Plaintiff remained
2 the same after Hagen implemented the Hagen Direct program.

3    26.   Whether or not Plaintiff contemplated continuing to
4 distribute Hagen products after Hagen introduced the Hagen Direct
5 program.

6    27.   Whether or not, assuming there is an agreement between
7 Hagen and Plaintiff and that Plaintiff performed its obligations
8 under the agreement, Hagen breached the agreement by refusing to
9 alter its refund policy as demanded by Plaintiff.

10    28.   Whether or not, assuming there is an agreement between
11 Hagen and Plaintiff, assuming that Plaintiff performed its
12 obligations under the agreement, and assuming that Hagen breached
13 the agreement, Plaintiff mitigated its damages by selling the
14 "Disputed Inventory."

15    29.   Whether or not Plaintiff paid all outstanding invoices
16 that it owed to Hagen.

17    30.   Whether or not Plaintiff still has an outstanding invoice
18 amount owed to Hagen for approximately $20,000.

19    31.   Whether or not Hagen's return policy provided that Hagen
20 would refund a distributor for defective products and/or for
21 wrapped/unopened products within 90 days from date of purchase.

22    32.   Whether or not Hagen's return policy provided that Hagen
23 would not refund a distributor for discontinued products or
24 shop-worn products (unwrapped products).

25    33.   Whether or not after the launch of the Hagen Direct
26 program, Hagen offered to modify its return policy so that it was

15

1   more favorable to Plaintiff by allowing Plaintiff to return all
2   sealed, wrapped products that had been in Plaintiff's warehouse for
3   up to nine months from date of purchase.

4       34.   Whether or not Plaintiff demanded that Hagen accept a
5   return of all unsold Hagen products, even though some of the
6   products did not qualify for return because those products had been
7   opened, discontinued and/or in Plaintiff's possession for more than
8   9 months (and up to two years in some cases) (collectively, the
9   "Old Inventory").

10      35.   Whether or not Plaintiff demanded that Hagen accept the
11  Old Inventory and reimburse it for its net cost of $250,000.

12      36.   Whether or not Hagen offered Plaintiff $140,000 to
13  compensate it for the Old Inventory pursuant to the modification
14  to its return policy that it offered to Plaintiff.

15      37.   Whether or not Plaintiff rejected Hagen's offer to accept
16  $140,000 for the Old Inventory.

17      38.   Whether or not the Old Inventory is no longer eligible
18  to be accepted under Hagen's return policy, even as offered to be
19  modified.

20      39.   Whether or not Plaintiff's Old Inventory is presently
21  valued at $200,000.

22      40.   Whether or not in or about 1993, Plaintiff and Defendant
23  orally agreed that Plaintiff would distribute Plaintiff's pet
24  supply products.

25      41.   Whether or not Plaintiff's president, Sam Sarkissian,
26  ever discussed with Hagen the conditions for termination of the

16

 1 | alleged distribution agreement.

 2 |     42.  Whether or not during initial discussions, plaintiff was
 3 | "guaranteed" by Dieter Hagen that defendant Hagen would never
 4 | distribute its products directly to retailers in the United States.

 5 |     43.  Whether or not plaintiff ever told its salespeople that
 6 | they were required to promote Hagen's products before promoting
 7 | products from other manufacturers.

 8 |     44.  Whether or not plaintiff could not force its salespeople
 9 | to promote Hagen products ahead of competing product lines.

10 |     45.  Whether or not Plaintiff's promotion of Hagen products
11 | was any different from Plaintiff's promotion of other competing
12 | product lines.

13 |     46.  Whether or not a term of the "Distribution Agreement"
14 | consisted of a promise by Hagen to refrain from soliciting any of
15 | Plaintiff's customers.

16 |     47.  Whether or not after the introduction of the Hagen Direct
17 | Program, Plaintiff contemplated continuing to distribute Hagen
18 | products.

19 |     48.  Whether or not the alleged "termination" letter attached
20 | to Plaintiff's Complaint establishes that Hagen sought to terminate
21 | Plaintiff as a distributor.

22 |     49.  Whether or not the terms of the alleged "termination"
23 | letter established. only a unified pricing and credit terms
24 | schedule.

25 |     50.  Whether or not the pricing terms for Plaintiff remained
26 | the same after Hagen implemented the Hagen Direct Program.

1      51.   Whether or not Hagen breached the alleged "Distribution
2  Agreement" by terminating the "Distribution Agreement," refusing
3  to accept the return of, or refund, the purchase price of the
4  "Disputed Inventory," and by unlawfully soliciting Plaintiff's
5  customers.   (Hagen comment: Compound.)

6      52.   Whether or not the February 2007 "Termination letter"
7  constituted a termination of the "Distribution Agreement."

8      53.   Whether or not since 1993, plaintiff has been a
9  distributor of HAGEN products throughout the western United States
10  pursuant to a distribution agreement with defendant HAGEN.

11      54.   Whether or not at the outset of the distribution
12  relationship between defendant HAGEN and plaintiff, in discussions
13  between plaintiff's president, Sam Sarkissian and Dieter Hagen,
14  plaintiff was specifically assured that HAGEN would not offer its
15  products for sale directly to retailers in plaintiff's distribution
16  area, or anywhere in the United States, but would continue to
17  distribute its products only through plaintiff S&S and other
18  distributors at an established distributor pricing schedule.
19  (Hagen comment:   compound and contrary to allegations made in
20  complaint.

21      55.   Whether or not, while there was no formal written
22  agreement between the parties, the terms of the Distribution
23  Agreement were established verbally, and memorialized over the 15
24  years of the parties' performance under the Distribution Agreement
25  by Hagen's delivery of products to plaintiff's Fairfield,
26  California and Seattle Washington distribution facilities, and

18

1  Hagen's submission of written invoices for payment, and by
2  plaintiff's payment for the products.

3      56.  Whether or not, pursuant to the distribution agreement,
4  plaintiff fully and faithfully performed its obligations under the
5  Distribution Agreement and incurred substantial expenses promoting
6  Hagen's products and providing distribution facilities in
7  California and Washington over a total of more than 15 years to
8  develop a valuable distributorship for the successful marketing and
9  sale of Hagen's products.

10     57.  Whether or not, until implementation of the Hagen Direct
11 Program, Hagen had never offered its products directly to
12 plaintiff's retail customers, but had distributed its products
13 through plaintiff pursuant to the Distribution Agreement.

14     58.  Whether or not, in or about February 2007, without cause
15 and with no prior notice to plaintiff, and in violation of its
16 Distribution Agreement with plaintiff, defendant Hagen provided
17 written notice to plaintiff of its unilateral decision to
18 discontinue its distribution relationship with plaintiff (the
19 "Termination Notice"), notwithstanding that plaintiff had and
20 continued to fully and faithfully perform its obligations under the
21 Distribution Agreement

22     59.  Whether or not the Termination Notice introduced a new
23 distribution program being implemented by Hagen, entitled the
24 "Hagen Direct" program.

25     60.  Whether or not, under the "Hagen Direct" program, Hagen
26 would be offering the same products previously sold to plaintiff

19

1 under the Distribution Agreement directly to plaintiff's
2 independent retailer customers at substantially reduced prices
3 (i.e., as much as 40% discounted prices).

4     61.   Whether or not the Hagen Direct Program offered the same
5 price to dealers and distributors and eliminated distributor
6 pricing.

7     62.   Whether or not immediately prior to delivery of the
8 Termination Notice, Hagen had shipped, and plaintiff had purchased
9 in excess of $200,000 of products at Hagen's established pricing
10 schedule in accordance with its customary and established
11 distribution relationship with Hagen ("the Disputed Inventory").

12    63.   Whether or not Hagen refused, and has continued to refuse
13 to accept the return of the Disputed Inventory, or to refund the
14 purchase price paid by plaintiff for the Disputed Inventory.

15    64.   Whether or not, while plaintiff's president, Sam
16 Sarkissian never specifically discussed termination of the
17 Distribution Agreement with Dieter Hagen or other representatives
18 of defendant Hagen, the understanding reached at the outset of the
19 distribution relationship was that the relationship would continue
20 as long as plaintiff continued to use its best efforts to promote
21 and solicit the sale of Hagen's products, and in fact distributed
22 Hagen products throughout S&S Supplies' market area.

23    65.   Whether or not by implementing the Hagen Direct Program
24 and offering the full line of Hagen products directly to
25 plaintiff's retailers at a "unified pricing schedule", Hagen
26 unilaterally eliminated all of the economic benefits of the

20

1  Distribution Agreement for plaintiff.   Under the Hagen Direct
2  Program, Hagen marked its products for sale directly to plaintiff's
3  retailers under a "unified pricing schedule" that it would also
4  purportedly offer to plaintiff, thus eliminating plaintiff's
5  ability to realize any profit from the continued distribution and
6  sale of Hagen products to plaintiff's retail customers.

7  C.   Hagen's Disputed Factual Issues Relevant To Plaintiff's
8       Declaratory Relief Claim

9       1.   Whether or not Plaintiff's request for relief, to
10  determine whether any agreement exists and if Hagen breached it,
11  is appropriate.

12       **V.   NON-DISCOVERY MOTIONS TO THE COURT AND RESOLUTION**

13       A single motion for summary judgment was tendered by the
14  defendant.

15       As to the contract claims, defendant conceded that the
16  question of whether any contract existed and was enforceable was
17  a triable question.   Defendant argued that, assuming that there
18  was an enforceable contract, there was nonetheless no material
19  question regarding breach.   The court rejected this argument in
20  part.   The court held that there was a triable question as to
21  whether the contract explicitly prohibited defendant from
22  selling directly to retailers.   Order of Feb. 4, 2010 at 14.
23  There was also a triable question as to whether the contract
24  contained implicit terms prohibiting termination except upon
25  reasonable notice or for good cause.   Id. at 23.   The court
26  granted partial summary judgment, however, rejecting plaintiff's

1  contention that even upon reasonable notice, the contract could
2  be terminated only for cause.  Id.  Finally, a triable question
3  existed as to whether defendant had good cause or defendant had
4  provided reasonable notice.  Id. at 25-26.  Pursuant to these
5  findings, the court held that at most, plaintiff could seek
6  damages for the failure to provide reasonable notice of the
7  termination of the contract.  Id. at 27.

8       The court granted defendant's motion as to the remaining
9  claims.  The trade secrets claims failed because no evidence
10 indicated that defendant used confidential information.  Id. at
11 29.  The intentional interference claims failed because
12 plaintiff provided no evidence of contracts with third parties
13 or of unlawful conduct by defendant.  Id. at 31-33.  The unfair
14 competition claim failed because plaintiff had not identified
15 unfair, unlawful, or fraudulent conduct.  Id. at 31.
16 Plaintiff's claim for injunctive relief failed because plaintiff
17 was not entitled to such relief under any of the surviving
18 claims.  Id. at 34.

19      Thus, the surviving claims are for breach of contract,
20 breach of the implied covenant of good faith and fair dealing,
21 unjust enrichment, and declaratory judgment.

22              **VI.   DISPUTED EVIDENTIARY ISSUES**

23      Neither party suggests that there will be disputed
24 evidentiary issues.

25              **VII.   SPECIAL FACTUAL INFORMATION**

26      None.

22

1          **VIII.  RELIEF SOUGHT**

2          Plaintiff seeks compensatory damages, disgorgement of

3    profits, costs, and a declaratory judgment that defendant has

4    breached the agreement.

5          Defendant seeks judgment in its favor.

6          Both parties seek costs.

7                         **IX.  POINTS OF LAW**

8          (a) The elements, standards, and burdens of proof of a

9    claim for breach of contract under California law.

10         (b) The elements, standards, and burdens of proof of a

11   claim for breach of the implied covenant of good faith and fair

12   dealing under California law.

13         (c) The elements, standards, and burdens of proof of a

14   claim for declaratory relief under California law.

15         (d) The elements, standards, and burdens of proof of a

16   claim for unjust enrichment under California law.

17         (e) The elements, standards, and burdens of proof for the

18   defense of the statute of frauds under California law.

19         (f) The elements, standards, and burdens of proof for the

20   defense of waiver of breach under California law.

21         (g) The elements, standards, and burdens of proof for the

22   defense of impossibility of performance under California law.

23         (h) The elements, standards, and burdens of proof for the

24   defense of mistake under California law.

25         (i) The elements, standards, and burdens of proof for the

26   defense of unclean hands under California law.

                              23

1    (j) The elements, standards, and burdens of proof for the
2  defense of laches under California law.

3    (k) The elements, standards, and burdens of proof for the
4  defense of failure to mitigate damages under California law.

5    (k) As to the claim for unjust enrichment, the elements,
6  standards, and burdens of proof for the defense of adequate
7  remedy at law.

8    ANY CAUSES OF ACTION OR AFFIRMATIVE DEFENSES NOT EXPLICITLY
9  ASSERTED IN THE PRETRIAL ORDER UNDER POINTS OF LAW AT THE TIME
10 IT BECOMES FINAL ARE DISMISSED, AND DEEMED WAIVED.

11                    **X.   ABANDONED ISSUES**

12   None.

13                      **XI.   WITNESSES**

14   Plaintiff anticipates calling the following witnesses:
15   Sergio Villalpando and Ruby Chaidez.

16   Defendant anticipates calling the following witnesses:
17   See attachment "A".

18   Each party may call a witness designated by the other.

19   A.   No other witnesses will be permitted to testify
20 unless:

21   (1)   The party offering the witness demonstrates that the
22 witness is for the purpose of rebutting evidence which could not
23 be reasonably anticipated at the Pretrial Conference, or

24   (2)   The witness was discovered after the Pretrial
25 Conference and the proffering party makes the showing required
26 in "B" below.

24

1    B.    Upon the post-Pretrial discovery of witnesses, the
2  attorney shall promptly inform the court and opposing parties of
3  the existence of the unlisted witnesses so that the court may
4  consider at trial whether the witnesses shall be permitted to
5  testify.  The evidence will not be permitted unless:

6         (1)   The witnesses could not reasonably have been
7  discovered prior to Pretrial;

8         (2)   The court and opposing counsel were promptly
9  notified upon discovery of the witnesses;

10        (3)   If time permitted, counsel proffered the
11  witnesses for deposition;

12        (4)   If time did not permit, a reasonable summary of
13  the witnesses' testimony was provided opposing counsel.

14              **XII.   EXHIBITS, SCHEDULES AND SUMMARIES**

15        Plaintiff offers no exhibits.

16        Defendant contemplates the following by way of exhibits:
17  See attachment "B".

18   A.    No other exhibits will be permitted to be introduced
19  unless:

20        (1)   The party proffering the exhibit demonstrates
21  that the exhibit is for the purpose of rebutting evidence which
22  could not be reasonably anticipated at the Pretrial Conference,
23  or

24        (2)   The exhibit was discovered after the Pretrial
25  Conference and the proffering party makes the showing required
26  in paragraph "B," below.

25

B.    Upon the post-Pretrial discovery of exhibits, the attorneys shall promptly inform the court and opposing counsel of the existence of such exhibits so that the court may consider at trial their admissibility.  The exhibits will not be received unless the proffering party demonstrates:

(1)   The exhibits could not reasonably have been discovered prior to Pretrial;

(2)   The court and counsel were promptly informed of their existence;

(3)   Counsel forwarded a copy of the exhibit(s) (if physically possible) to opposing counsel.  If the exhibit(s) may not be copied, the proffering counsel must show that he has made the exhibit(s) reasonably available for inspection by opposing counsel.

As to each exhibit, each party is ordered to exchange copies of the exhibit not later than fifteen (15) days from the date of this Pretrial Order.  Each party is then granted ten (10) days to file with the court and serve on opposing counsel any objections to said exhibits.  In making said objections, the party is to set forth the grounds for the objection.  As to each exhibit which is not objected to, it shall be marked and received into evidence and will require no further foundation.  Each exhibit which is objected to will be marked for identification only.

1     In addition to electronically filing said objections, if
2  any, the objections must be submitted by email, as an attachment
3  in Word or WordPerfect format, to: arivas@caed.uscourts.gov.

4     The attorney for each party is directed to appear before
5  and present an original and one (1) copy of said exhibit to Ana
6  Rivas, Deputy Courtroom Clerk, not later than 10:30 a.m. on the
7  date set for trial.  All exhibits shall be submitted to the
8  court in binders.  Plaintiff's exhibits shall be listed
9  numerically.  Defendant's exhibits shall be listed
10 alphabetically.  The parties shall use the standard exhibit
11 stickers provided by the court:  pink for plaintiff and blue for
12 defendant.

13              **XIII.  DISCOVERY DOCUMENTS**

14     Plaintiff presently anticipates that the following
15 discovery documents may be offered at trial:

16     1.    Interrogatory Responses:  Defendant Hagen's Responses
17 to Interrogatories 1, 2, 3, 4, 5, 6, 9, 10 and 17.

18     2.    Portions of Deposition Transcripts:

19           a.    Testimony from the deposition transcript from the
20 Dieter Hagen deposition taken on August 18, 2009 contained on
21 pages 16, 25-28, 31-32, 34, 48-50, 53-57, 61, 64-67, 85 and
22 123-124.

23           b.    Testimony from the deposition transcript from the
24 Trevor Hagen deposition taken on August 18, 2009 contained on
25 pages 13, 17, 31, 37-39, 43-46, 66-67, 70-79, 82-84, 99 and 105.
26     Defendants:  none, except for impeachment purposes.

27

1  **XIV. FURTHER DISCOVERY OR MOTIONS**

2  None.

3  **XV. STIPULATIONS**

4  None.

5  **XVI. AMENDMENTS/DISMISSALS**

6  None.

7  **XVII. FURTHER TRIAL PREPARATION**

8  A.  Counsel are directed to Local Rule 285 regarding the
9  contents of and the time for filing trial briefs.

10  B.  Counsel are informed that the court has prepared a set
11  of standard jury instructions. In general, they cover all
12  aspects of the trial except those relating to the specific
13  claims of the complaint. Accordingly, counsel need not prepare
14  instructions concerning matters within the scope of the prepared
15  instructions. A copy of the prepared instructions is given to
16  the parties at the Pretrial Conference.

17  B.  For all cases tried to the court, counsel are ordered
18  to file and serve Proposed Findings of Fact and Conclusions of
19  Law not later than ten (10) days prior to the first date of
20  trial.

21  C.  Counsel are further directed that their specific jury
22  instructions shall be filed fourteen (14) calendar days prior to
23  the date of trial. As to any instructions counsel desires to
24  offer, they shall be prepared in accordance with Local Rule
25  163(b)(1) which provides:

26

28

1    "Two copies of the instructions shall be submitted.
2    One copy shall be electronically filed as a .pdf
3    document and shall contain each instruction on a
4    separate page, numbered and identified as to the party
5    presenting it. Each instruction shall cite the
6    decision, statute, ordinance, regulation or other
7    authority supporting the proposition stated in the
8    instruction."

9    The second copy ("jury copy") shall be submitted by e-mail
10   to lkkorders@caed.uscourts.gov.

11   **In addition, counsel shall provide copies of proposed forms**
12   **of verdict, including special verdict forms, at the time the**
13   **proposed jury instructions are filed with the court.**

14   D.    It is the duty of counsel to ensure that any
15   deposition which is to be used at trial has been filed with the
16   Clerk of the Court.  Counsel are cautioned that a failure to
17   discharge this duty may result in the court precluding use of
18   the deposition or imposition of such other sanctions as the
19   court deems appropriate.

20   E.    The parties are ordered to file with the court and
21   exchange between themselves not later than one (1) week before
22   the trial a statement designating portions of depositions
23   intended to be offered or read into evidence (except for
24   portions to be used only for impeachment or rebuttal).

25   F.    The parties are ordered to file with the court and
26   exchange between themselves not later than one (1) week before

29

1  trial the portions of answers to interrogatories which the
2  respective parties intend to offer or read into evidence at the
3  trial (except portions to be used only for impeachment or
4  rebuttal).

5      G.   The court has extensive audiovisual equipment
6  available.   Any counsel contemplating its use shall contact the
7  court's Telecommunications Manager, Andre Carrier, at (916) 930-
8  4223, at least two weeks in advance of trial to receive the
9  appropriate training.

10                **XVIII.   SETTLEMENT NEGOTIATIONS**

11     A Settlement Conference is **SET** before the Honorable Gregory
12 G. Hollows, United States Magistrate Judge, on May 25, 2010 at
13 9:00 a.m.   Counsel are directed to submit settlement conference
14 statements to the settlement judge **not later than seven (7) days**
15 **prior to the conference.**   At counsel's option, such statements
16 may be submitted in confidence pursuant to Local Rule 270(d).

17     Each party is directed to have a principal capable of
18 disposition at the Settlement Conference or to be fully
19 authorized to settle the matter on any terms and at the
20 Settlement Conference.

21                **XIX.   AGREED STATEMENTS**

22     None.

23            **XX.   SEPARATE TRIAL OF ISSUES**

24     The matter of punitive damages will be severed and will be
25 heard immediately following the jury's determination as to
26 actual damages.

                              30

1    **XXI.  IMPARTIAL EXPERTS/LIMITATION OF EXPERTS**

2    None.

3    **XXII.  ATTORNEYS' FEES**

4    Neither party is seeking attorneys' fees.

5    **XXIII.  MISCELLANEOUS**

6    None.

7    **XXIV.  ESTIMATE OF TRIAL TIME/TRIAL DATE**

8    Trial by the court is continued to July 7, 2010, at 10:30

9    a.m., in Courtroom No. 4.  The parties represent in good faith

10   that the trial will take approximately three (3) days.

11   Each party is to file with the court a proposed statement

12   of fact and conclusions of law no later than seven (7) days

13   prior to trial.

14   Counsel are to call Ana Rivas, Courtroom Deputy, at (916)

15   930-4133, one week prior to trial to ascertain status of trial

16   date.

17   **XXV.  OBJECTIONS TO PRETRIAL ORDER**

18   Each party is granted fifteen (15) days from the effective

19   date of this Pretrial Order [Tentative] to object to or augment

20   same.  Each party is also granted five (5) days thereafter to

21   respond to the other party's objections.  If no objections or

22   additions are made, the Tentative Pretrial Order will become

23   final without further order of the court.

24   The parties are reminded that pursuant to Federal Rule of

25   Civil Procedure 16(e), this order shall control the subsequent

26

31

1  course of this action and shall be modified only to prevent
2  manifest injustice.
3                        **XXVI.   OTHER**
4       All time limits and dates that refer to the Pretrial Order
5  refer to the date this Pretrial Order [Tentative] is filed and
6  not the date an amended order, if any, is filed.
7       IT IS SO ORDERED.
8       DATED: April 14, 2010.
9
10
11                              LAWRENCE K. KARLTON
                                SENIOR JUDGE
12                              UNITED STATES DISTRICT COURT
13
14
15
16
17
18
19
20
21
22
23
24
25
26

                                32

1 | Christopher W. Sweeney (SBN 143217)
LAW OFFICES OF CHRISTOPHER W. SWEENEY
2 | 1500 Oliver Road, Suite K, PMB 321
Fairfield, CA 94534
3 | Telephone: (707) 435-1244
Facsimile: (707) 435-1245
4 | Email: cwslaw@comcast.net

5 | Attorney for Plaintiff
BOLAND, INC., dba S&S SUPPLIES
6 |

7 |

8 | **UNITED STATES DISTRICT COURT**

9 | **EASTERN DISTRICT OF CALIFORNIA**

10 |

11 | BOLAND, INC., a California corporation dba      )      **Case No. 2:08-CV-02201-LKK-JFM**
S&S SUPPLIES,                                  )      **(E-filing)**
12 |                                                )
                                                )      **PLAINTIFF's WITNESS LIST**
13 |              Plaintiff,                        )      **(Attachment "A" to Plaintiff Boland, Inc.'s**
                                                )      **Separate PreTrial Statement)**
14 |      vs.                                       )
                                                )      **Date: February 16, 2010**
15 | ROLF C. HAGEN (USA) CORP., and DOES 1          )      **Time: 1:30 p.m.**
through 50, inclusive,                         )      **Courtroom: 4**
16 |                                                )      **[The Hon. Lawrence K. Karlton]**
              Defendants.                        )
17 | _____ )

18 |

19 |      Plaintiff BOLAND INC., a California corporation, dba S&S SUPPLIES and ROLF C.

20 | HAGEN (USA) CORP. respectfully submits this Witness List as Attachment "A" to Plaintiff's

21 | Separate PreTrial Statement in advance of the Final Pretrial Conference scheduled for February 16,

22 | 2010 in the above captioned matter pursuant to the Court's Status (Pretrial Scheduling) Conference

23 | Order entered in the matter on December 18, 2008.

24 |      Plaintiff may call the following prospective witnesses at trial:

25 |
        1.  Sam Sarkissian
26 |          S&S Supplies
            2750 Maxwell Way
27 |          Fairfield, CA 94534

28 |

2. Greg Sarkissian
   S&S Supplies
   2750 Maxwell Way
   Fairfield, CA 94534

3. Linda Kusaka
   S&S Supplies
   2750 Maxwell Way
   Fairfield, CA 94534

4. Mike Copeland
   S&S Supplies
   2750 Maxwell Way
   Fairfield, CA 94534

5. Razmik Arakel
   S&S Supplies
   2750 Maxwell Way
   Fairfield, CA 94534

6. Jim Pringle
   S&S Supplies
   2750 Maxwell Way
   Fairfield, CA 94534

7. William C. Edic, C.P.A.
   P.O. Box 325
   Homewood, California 96141
   **(Plaintiff's Expert Witness)**

8. Dieter Hagen
   ROLF C. HAGEN (USA) CORP.
   305 Forbes Blvd.
   Mansfield, MA 02048

9. Trevor Hagen
   ROLF C. HAGEN (USA) CORP.
   305 Forbes Blvd.
   Mansfield, MA 02048

10. Rolf C. Hagen Sr.
    ROLF C. HAGEN (USA) CORP.
    305 Forbes Blvd.
    Mansfield, MA 02048

11. Rolf C. Hagen Jr.
ROLF C. HAGEN (USA) CORP.
305 Forbes Blvd.
Mansfield, MA 02048

12. Robert ("Bob") DeRusha
ROLF C. HAGEN (USA) CORP.
305 Forbes Blvd.
Mansfield, MA 02048

13. Robert Baskinger
ROLF C. HAGEN (USA) CORP.
305 Forbes Blvd.
Mansfield, MA 02048

14. Jeff Sutherland
Central Garden & Pet
1340 Treat Boulevard
Suite 600
Walnut Creek, CA 94597

15. Glen W. Novotny
Telegraph Hill Partners
360 Post Street
Suite 601
San Francisco, CA 94108
**(Defendant's Expert Witness)**

16. Ronald G. Pomares
Pomares Gardner an Accounting Corporation
555 Capitol Mall
Suite 400
Sacramento, CA 95814
**(Defendant's Expert Witness)**

17. Plaintiff reserves the right to call any witness identified by Defendant in its Separate
PreTrial Statement or called to testify at trial.

//

//

//

//

//

3

1 | 18. Plaintiff reserves the right to call any witness whose identity is discovered by plaintiff
2 | after the date of this Pretrial Statement.

3 |           Respectfully submitted,

4 | Dated: February 1, 2010       LAW OFFICES OF
5 |               CHRISTOPHER W. SWEENEY

6 |

7 |           By: ___ /s/ Christopher W. Sweeney
8 |               Christopher W. Sweeney
              Attorney for Plaintiff BOLAND, INC.,
9 |               dba S&S SUPPLIES

10 |
11 |
12 |
13 |
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

Plaintiff's Witness List - CASE NO. 2:08-CV-02201-LKK-JFM (E-filing)

1   SEYFARTH SHAW LLP
    Lawrence E. Butler (SBN: 111043)
2   E-Mail: lbutler@seyfarth.com
    Andrea K. Anapolsky (SBN: 238297)
3   E-Mail: aanapolsky@seyfarth.com
    560 Mission Street, Suite 3100
4   San Francisco, California 94105
    Telephone: (415) 397-2823
5   Facsimile: (415) 397-8549

6   Attorneys for Defendant
    ROLF C. HAGEN (USA) CORP.
7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10  BOLAND, INC., a California corporation dba  )   Case No. 2:08-CV-02201-LKK-JFM
    S&S SUPPLIES,                                )
11                                               )   DEFENDANT'S AMENDED AND
                        Plaintiff,               )   RESTATED WITNESS LIST
12                                               )   (Attached as Attachment A to
                                                 )   Defendant's Separate Pre-Trial
    v.                                           )   Statement)
13                                               )
    ROLF C. HAGEN (USA) CORP., and DOES 1  )
14  through 50, inclusive,                       )
                                                 )   Date:  February 16, 2010
15                      Defendants.              )   Time:  1:30 p.m.
                                                 )   Judge: Hon. Lawrence K. Karlton
16                                               )
                                                 )
17

18          ROLF C. HAGEN (USA) CORP. ("Hagen") respectfully submits this Witness List as

19  Attachment "A" to Hagen's Separate Pre-Trial Statement in advance of the Final Pretrial

20  Conference scheduled for February 16, 2010 in the above captioned matter pursuant to the

21  Court's Status (Pretrial Scheduling) Conference Order entered in the matter on December 18,

22  2008.

23          Hagen may call the following prospective witnesses at trial:

24      1.    Sam Sarkissian
              S&S Supplies
25            2750 Maxwell Way
              Fairfield, CA 94534
26
        2.    Greg Sarkissian
27            S&S Supplies
              2750 Maxwell Way
28            Fairfield, CA 94534

                              ATTACHMENT "B"

HAGEN'S WITNESS LIST/CASE NO. 2:08-CV-02201-LKK-JFM

3.   Linda Kusaka
     S&S Supplies
     2750 Maxwell Way
     Fairfield, CA 94534

4.   Dieter Hagen
     ROLF C. HAGEN (USA) CORP.
     305 Forbes Blvd.
     Mansfield, MA 02048

5.   Trevor Hagen
     ROLF C. HAGEN (USA) CORP.
     305 Forbes Blvd.
     Mansfield, MA 02048

6.   Ronald G. Pomares
     555 Capitol Mall, Suite 400
     Sacramento, CA 95814

7.   Lynne Carlino
     ROLF C. HAGEN (USA) CORP.
     305 Forbes Blvd.
     Mansfield, MA 02048

8.   Glen W. Novotny
     Telegraph Hill Partners
     360 Post Street
     Suite 601
     San Francisco, CA 94108

Hagen reserves the right to call any witness identified by Plaintiff in its Separate Pre-Trial Statement or called to testify at trial.

Hagen also reserves the right to call any witness whose identity is discovered by Hagen after the date of this Pre-Trial Statement.

DATED: February 12, 2010                    SEYFARTH SHAW LLP

                                            /s/ Andrea K. Anapolsky
                                            By_____
                                                 Lawrence E. Butler
                                                 Andrea K. Anapolsky
                                            Attorneys for Defendant
                                            ROLF C. HAGEN (USA) CORP.

2

HAGEN'S WITNESS LIST/CASE NO. 2:08-CV-02201-LKK-JFM
12094858v.2

1 | Christopher W. Sweeney (SBN 143217)
LAW OFFICES OF CHRISTOPHER W. SWEENEY
2 | 1500 Oliver Road, Suite K, PMB 321
Fairfield, CA 94534
3 | Telephone: (707) 435-1244
Facsimile: (707) 435-1245
4 | Email: cwslaw@comcast.net

5 | Attorney for Plaintiff
BOLAND, INC., dba S&S SUPPLIES
6

7

8 | **UNITED STATES DISTRICT COURT**

9 | **EASTERN DISTRICT OF CALIFORNIA**

10

11 | BOLAND, INC., a California corporation dba ) **Case No. 2:08-CV-02201-LKK-JFM**
S&S SUPPLIES, ) **(E-filing)**
12 | )
13 | ) **PLAINTIFF's EXHIBIT LIST**
Plaintiff, ) **(Attachment "B" to Plaintiff Boland, Inc.'s**
14 | ) **Separate PreTrial Statement)**
vs. )
15 | ) **Date: February 16, 2010**
ROLF C. HAGEN (USA) CORP., and DOES 1 ) **Time: 1:30 p.m.**
through 50, inclusive, ) **Courtroom: 4**
16 | ) **[The Hon. Lawrence K. Karlton]**
Defendants. )
17 | _____ )

18

19 | Plaintiff BOLAND INC., a California corporation, dba S&S SUPPLIES and ROLF C.

20 | HAGEN (USA) CORP. respectfully submits this Exhibit List as Attachment "B" to Plaintiff's

21 | Separate PreTrial Statement in advance of the Final Pretrial Conference scheduled for February 16,

22 | 2010 in the above captioned matter pursuant to the Court's Status (Pretrial Scheduling) Conference

23 | Order entered in the matter on December 18, 2008.

24 | Plaintiff presently expects to offer the following documents and exhibits at trial:

25 | 1. Emails dated March 22, 2007 through March 27, 2007 between and among Sam

26 | Sarkissian, Dieter Hagen, Trevor Hagen and Linda Kusaka (Plaintiff's Bates Stamp Nos. P-0011

27 | through P-0089).

28 |

*ATTACHMENT "C"*
1

2.      Purchase Order Detail Report for Hagen Purchases From 1993 to 2007 (Plaintiff's Bates Stamp Nos. P-CONFIDENTIAL 0020252 through 0021707).

3.      Vendor/Customer Summary Report/Hagen Profits From 1993 to 2008 (Plaintiff's Bates Stamp Nos. P-CONFIDENTIAL 0021708 through 0021727).

4.      Boland Sales and Profits Summary for 1993 through 2009 (Plaintiff's Bates Stamp No. P-CONFIDENTIAL 0021728).

5.      Summary History Inquiry Report for Sales vs. Purchases From 1993 to 2008 (Plaintiff's Bates Stamp Nos. P-CONFIDENTIAL 0021729 through 0021745).

6.      Rolf C. Hagen (USA) Inc. Facsimile Transmittal Sheet dated January 2, 2007 (Plaintiff's Bates Stamp No. P- CONFIDENTIAL 0020251).

7.      Report of Disputed Inventory Remaining as of February 1, 2007 (Plaintiff's Bates Stamp Nos. P-CONFIDENTIAL 0021746 through 0021763).

8.      1995 Detail Summary Report of Costs and Sales of Hagen Products (Plaintiff's Bates Stamp Nos. P-CONFIDENTIAL 001692 through 003113).

9.      1996 Detail Summary Report of Costs and Sales of Hagen Products (Plaintiff's Bates Stamp Nos. P-CONFIDENTIAL 003114 through 004546).

10.      1997 Detail Summary Report of Costs and Sales of Hagen Products (Plaintiff's Bates Stamp Nos. P-CONFIDENTIAL 004547 through 006136).

11.      1998 Detail Summary Report of Costs and Sales of Hagen Products (Plaintiff's Bates Stamp Nos. P-CONFIDENTIAL 006137 through 007804).

12.      1999 Detail Summary Report of Costs and Sales of Hagen Products (Plaintiff's Bates Stamp Nos. P-CONFIDENTIAL 007805 through 009901).

//

13.     2000 Detail Summary Report of Costs and Sales of Hagen Products (Plaintiff's Bates Stamp Nos. P-CONFIDENTIAL 009902 through 0011651).

14.     2001 Detail Summary Report of Costs and Sales of Hagen Products (Plaintiff's Bates Stamp Nos. P-CONFIDENTIAL 0011652 through 0013020).

15.     2002 Detail Summary Report of Costs and Sales of Hagen Products (Plaintiff's Bates Stamp Nos. P-CONFIDENTIAL 0013021 through 0014480).

16.     2003 Detail Summary Report of Costs and Sales of Hagen Products (Plaintiff's Bates Stamp Nos. P-CONFIDENTIAL 0014480 through 0016039).

17.     2004 Detail Summary Report of Costs and Sales of Hagen Products (Plaintiff's Bates Stamp Nos. P-CONFIDENTIAL 0016039 through 0017385).

18.     2005 Detail Summary Report of Costs and Sales of Hagen Products (Plaintiff's Bates Stamp Nos. P-CONFIDENTIAL 0017385 through 0018604).

19.     2006 Detail Summary Report of Costs and Sales of Hagen Products (Plaintiff's Bates Stamp Nos. P-CONFIDENTIAL 0018605 through 0019733).

20.     2007 Detail Summary Report of Costs and Sales of Hagen Products (Plaintiff's Bates Stamp Nos. P-CONFIDENTIAL 0019734 through 0020144).

21.     2008 Detail Summary Report of Costs and Sales of Hagen Products (Plaintiff's Bates Stamp Nos. P-CONFIDENTIAL 0021764 through 0021766).

22.     2009 Detail Summary Report of Costs and Sales of Hagen Products (Plaintiff's Bates Stamp Nos. P-CONFIDENTIAL 0021767 through 0021768).

23.     Compensatory Damages Report, dated July 28, 2009, prepared by Plaintiff's expert William C. Edic, CPA, with attached Exhibits (Report and Exhibits total 35 pages).

//

24.     Documents establishing the profits or financial condition of defendant HAGEN that will be requested for production at trial pursuant to subpoena pursuant to California Civil Code § 3295(c).

25.     Deposition Transcript and Exhibits to the Deposition of Dieter Hagen.

26.     Deposition Transcript and Exhibits to the Deposition of Trevor Hagen.

27.     Spreadsheet of Hagen Products (Defendant's Bates Stamp Nos. RH CONFIDENTIAL 0000001 through 0000004).

28.     Rolf C. Hagen (USA) Corp. Invoice dated January 15, 2007 (Defendant's Bates Stamp Nos. RH CONFIDENTIAL 0000005 through 0000009).

29.     Gold Dealer 2005 Program Guidelines (Defendant's Bates Stamp No. RH 0000010).

30.     Spreadsheet of Hagen Products (Defendant's Bates Stamp No. RH CONFIDENTIAL 00000011).

31.     Spreadsheet of Hagen Products (Defendant's Bates Stamp Nos. RH CONFIDENTIAL 0000012 through 0000014).

32.     Rolf C. Hagen (USA) Corp. letter, undated, signed by Trevor Hagen (Defendant's Bates Stamp No. RH 0000015).

33.     Rolf C. Hagen (USA) Corp. Materials from Hagen Preferred Dealer Program Binder (Defendant's Bates Stamp Nos. RH 0000016 through 0000027).

34.     Rolf C. Hagen (USA) Corp. Materials from Hagen Preferred Dealer Program Binder (Defendant's Bates Stamp Nos. RH 0000028 through 0000031).

35.     Rolf C. Hagen (USA) Corp. Materials from Hagen Direct Binder (Defendant's Bates Stamp Nos. RH 0000032 through 0000041).

//

36.     Rolf C. Hagen (USA) Corp. Materials from Hagen Preferred Dealer Program Binder

(Defendant's Bates Stamp Nos. RH 0000042 through 0000050).

37.     Rolf C. Hagen (USA) Corp. Materials from the "Why Partner With Hagen" Binder

(Defendant's Bates Stamp Nos. RH 0000051 through 0000069).

38.     Summary Report of Hagen Products (Plaintiff's Bate Stamp Nos. 0090-001691).

39.     Defendant Rolf C. Hagen (USA) Corp. Expert Witness Designation, dated July 28,

2009, with attached Expert Witness Reports of Defendant's experts Glen W. Novotny and Ronald

G. Pomares (Expert Witness Designation and attached reports total 23 pages).

40.     Plaintiff reserves the right to offer any documents or exhibits offered by Defendant in

its Separate PreTrial Statement or at trial, including documents or exhibits relied upon by

defendant's expert witnesses.

41.     Plaintiff reserves the right to offer any documents or exhibits the existence of which

are discovered by plaintiff after the date of this Pretrial Statement including, without limitation,

documents produced by defendant or any non-party pursuant to a trial subpoena.

Respectfully submitted,

Dated: February 1, 2010                 LAW OFFICES OF
                                        CHRISTOPHER W. SWEENEY


                                        By: ___/s/ Christopher W. Sweeney_____
                                            Christopher W. Sweeney
                                            Attorney for Plaintiff BOLAND, INC.,
                                            dba S&S SUPPLIES

1 | SEYFARTH SHAW LLP
Lawrence E. Butler (SBN: 111043)
2 | E-Mail: lbutler@seyfarth.com
Andrea K. Anapolsky (SBN: 238297)
3 | E-Mail: aanapolsky@seyfarth.com
560 Mission Street, Suite 3100
4 | San Francisco, California 94105
Telephone: (415) 397-2823
5 | Facsimile: (415) 397-8549

6 | Attorneys for Defendant
ROLF C. HAGEN (USA) CORP.
7

8 | UNITED STATES DISTRICT COURT

9 | EASTERN DISTRICT OF CALIFORNIA

10 | BOLAND, INC., a California corporation dba ) Case No. 2:08-CV-02201-LKK-JFM
S&S SUPPLIES, )
11 | ) **DEFENDANT'S EXHIBIT LIST**
) **(Attached as Attachment B to**
12 | Plaintiff, ) **Defendant's Separate Pre-Trial**
) **Statement)**
13 | v. )
)
ROLF C. HAGEN (USA) CORP., and DOES 1 )
14 | through 50, inclusive, ) Date: February 16, 2010
) Time: 1:30 p.m.
15 | Defendants. ) Judge: Hon. Lawrence K. Karlton
)
16 | )
)
17 |

18 |        ROLF C. HAGEN (USA) CORP. ("Hagen") respectfully submits this Exhibit List as

19 | Attachment "B" to Hagen's Separate Pre-Trial Statement in advance of the Final Pretrial

20 | Conference scheduled for February 16, 2010 in the above captioned matter pursuant to the

21 | Court's Status (Pretrial Scheduling) Conference Order entered in the matter on December 18,

22 | 2008.

23 |        Hagen presently expects to offer the following documents and exhibits at trial:

24 |        A.        Emails dated March 22, 2007 through March 27, 2007 between and among Sam

25 | Sarkissian, Dieter Hagen, Trevor Hagen and Linda Kusaka (Plaintiff's Bates Stamp Nos. P-0011

26 | through P-0089).

27 |        B.        Summary of Plaintiff's Invoice Amounts from November 2006 through January

28 | 2007 (Hagen's Bate Stamp No. RH CONFIDENTIAL 0000070.)

*ATTACHMENT "D"*

HAGEN'S EXHIBIT LIST/CASE NO. 2:08-CV-02201-LKK-JFM

1       C.      Hagen invoices and credit reports from February 2, 2005 through January 31,

2   2007 (Hagen's Bate Stamp No. RH CONFIDENTIAL 0000071 through 0000188).

3       D.      Hagen invoices dated January 15, 2007 (Hagen's Bate Stamp No. RH

4   CONFIDENTIAL 0000005 through 0000009).

5       E.      Report of Disputed Inventory Remaining as of February 1, 2007 (Plaintiff's Bates

6   Stamp Nos. P-CONFIDENTIAL 0021746 through 0021763).

7       F.      Letter identified as Exhibit 1 attached to the Deposition of Sam Sarkissian.

8       G.      2006 Detail Summary Report of Costs and Sales of Hagen Products (Plaintiff's

9   Bates Stamp Nos. P-CONFIDENTIAL 0018605 through 0019733).

10      H.      2007 Detail Summary Report of Costs and Sales of Hagen Products (Plaintiff's

11  Bates Stamp Nos. P-CONFIDENTIAL 0019734 through 0020144).

12      I.      2008 Detail Summary Report of Costs and Sales of Hagen Products (Plaintiff's

13  Bates Stamp Nos. P-CONFIDENTIAL 0020145 through 0020222).

14      J.      2009 Detail Summary Report of Costs and Sales of Hagen Products (Plaintiff's

15  Bates Stamp Nos. P-CONFIDENTIAL 0020223 through 0020230).

16      K.      Hagen's Expert Witness Designation, dated July 28, 2009, with attached Expert

17  Witness Report of Hagen's expert Ronald G. Pomares.

18      L.      Deposition Transcript and Exhibits to the Deposition of Sam Sarkissian.

19      M.      Deposition Transcript and Exhibits to the Deposition of Greg Sarkissian.

20      N.      Deposition Transcript and Exhibits to the Deposition of Linda Kusaka.

21      O.      Deposition Transcript and Exhibits to the Deposition of Dieter Hagen.

22      P.      Deposition Transcript and Exhibits to the Deposition of Trevor Hagen.

23      Hagen reserves the right to offer any documents or exhibits offered by Plaintiff in its

24  Separate Pre-Trial Statement or at trial, including documents or exhibits relied upon by

25  Plaintiff's expert witnesses.

26  //

27  //

28  //

2

1        Hagen reserves the right to offer any documents or exhibits the existence of which are

2   discovered by Hagen after the date of this Pretrial Statement including, without limitation,

3   documents produced by Plaintiff or any non-party pursuant to a trial subpoena.

4   DATED: February 8, 2010                    SEYFARTH SHAW LLP

5

6                                              /s/ Andrea K. Anapolsky
                                            By_____
7                                               Lawrence E. Butler
                                                Andrea K. Anapolsky
8                                               Attorneys for Defendant
                                                ROLF C. HAGEN (USA) CORP.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                           3
   HAGEN'S EXHIBIT LIST/CASE NO. 2:08-CV-02201-LKK-JFM
   12094849v.1