UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

BOLAND, INC., a California
corporation dba S&S SUPPLIES,

           Plaintiff,

    v.

ROLF C. HAGEN (USA) CORP.,
and DOES 1 through 50,
inclusive,

           Defendants.

_____/

NO. CIV. S-08-2201 LKK/JFM

**AMENDED
PRETRIAL CONFERENCE ORDER
[TENTATIVE]**

    Pursuant to court order, a Pretrial Conference was held in Chambers on April 12, 2010.  CHRISTOPHER W. SWEENEY appeared as counsel for plaintiff; LAWRENCE E. BUTLER and ANDREA K. ANAPOLSKY appeared as counsel for defendants.  After hearing, the court makes the following findings and orders:

## I. JURISDICTION/VENUE

    Jurisdiction is heretofore been found to be proper under 28 U.S.C. § 1332.  Venue is found to be proper under 28 U.S.C. § 1391(a).  Those orders are confirmed.

## II. JURY/NON-JURY

    The trial will be to the court.

1

### III.   UNDISPUTED FACTS

A.   Undisputed Facts Relevant to all Causes of Action

1.   Defendant Rolf C. Hagen (USA) Corp. ("Hagen") is a Massachusetts corporation.

2.   Hagen is a wholly-owned subsidiary of Rolf C. Hagen Incorporated ("Parent Co.").

3.   Hagen is in the business of selling pet specialty products within the U.S.

4.   Dieter Hagen joined Parent Co. in October 1959 and has been an employee of Parent Co. since then.

5.   Dieter Hagen is on the Board of Directors of Parent Co.

6.   Dieter Hagen has been the Senior Vice President of Parent Co. and all of its subsidiaries since the 1970s.

7.   Trevor Hagen, Dieter Hagen's son, worked for Parent Co. from 1985 to 1991.

8.   Trevor Hagen worked for Hagen from February 1992 to February 2008.

9.   Trevor Hagen was a regional sales manager for Hagen from February 1992 to 2001.

10.   Trevor Hagen's duties as regional sales manager included working with distributors and retailers in Southern California.

11.   Trevor Hagen was the general manger/COO of Hagen from 2001 to 2007.

12.   Trevor Hagen's obligation as general manager/COO was to operate Hagen.

13.   Trevor Hagen developed the Gold Dealer program and the

2

1  Hagen Direct program.

2      14.   From the time Hagen started using U.S. distributors until
3  February 2007, Hagen generally offered distributors a discount
4  price based on volume

5      15.   The Board of Directors of Parent Co. approved the Hagen
6  Direct Program.

7      16.   Dieter Hagen participated in the Board's decision to
8  approve the Hagen Direct program.

9      17.   Trevor Hagen prepared and presented materials to the
10 Board of Directors of Parent Co. with respect to the Hagen Direct
11 program.

12     18.   Hagen formally launched Hagen Direct effective February
13 12, 2007.

14     19.   After the launch of Hagen Direct, all retailers and
15 distributors, including Plaintiff, were offered the same unified
16 pricing schedule and were free to purchase Hagen Products.

17     20.   After implementation of the Hagen Direct Program, Hagen
18 sold its products directly to retail customers that had formerly
19 worked through the distribution chain with Plaintiff.

20     21.   Plaintiff Boland Inc., dba as S&S Supplies ("Plaintiff"),
21 is a California corporation.

22     22.   Plaintiff's principal place of business is in Fairfield,
23 California.

24     23.   Plaintiff is a distributor of pet supplies to
25 independently owned pet stores.

26     24.   Plaintiff has a distribution facility in Fairfield,

3

1 | California.

2 |     25.   Plaintiff leased a distribution facility in the State of
3 | Washington starting in 2005.

4 |     26.   Sam Sarkissian is the Plaintiff's Founder, President and
5 | CEO.

6 |     27.   Sam Sarkissian is on Plaintiff's Board of Directors.

7 |     28.   Greg Sarkissian was Plaintiff's general manager from
8 | January 2009 until approximately December 2009.

9 |     29.   Linda Kusaka was Plaintiff's general manager from 2001
10 | through November 2007.

11 |     30.   Linda Kusaka was responsible for sending information to
12 | Hagen with respect to the Gold Dealer Program.

13 |     31.   Linda Kusaka sent Hagen the net dollar amounts for Hagen
14 | products sold by Plaintiff to retailers.

15 | B.    Undisputed Factual Issues Relevant to Plaintiff's Breach of
16 |     Contract Claim

17 |     1.   After 1993, Plaintiff sold products from other
18 | manufacturers during the time it was distributing Hagen's
19 | products.

20 |     2.   Hagen sold its products to other distributors within the
21 | same geographical region as Plaintiff.

22 |     3.   Sam Sarkissian and Dieter Hagen never discussed
23 | conditions for termination of any relationship between Hagen and
24 | Plaintiff.

25 |     4.   Hagen always established the pricing terms for the
26 | products it sold to Plaintiff.

4

1     5.    Plaintiff had no right to and never did negotiate prices

2  with Hagen.

3     6.    Plaintiff requested that Hagen accept the return of the

4  "Disputed Inventory" and refund the price paid by plaintiff for the

5  products.

6     7.    After Hagen's implementation of the Hagen Direct program,

7  plaintiff did not purchase any additional products from Hagen for

8  distribution to its retail customers.

9              **IV.   DISPUTED FACTUAL ISSUES**

10  A.    Disputed Facts Relevant to All Causes of Action

11     1.    Whether or not, prior to February 2007, Hagen sold pet

12  specialty supplies primarily, but not exclusively, through

13  distributors in the United States.

14     2.    Whether or not, prior to February 2007, Hagen sold pet

15  specialty supplies products to the following retailers in the U.S.:

16  All  Pet, PetSmart, PetCo and Petlands.

17     3.    Whether or not Hagen decided to implement the Hagen

18  Direct Program because, like other manufactures, Hagen faced

19  shrinking margins, decreased volume, increased competition from

20  other manufactures that had gone direct, distributors "low-balling"

21  manufacturers' products, internet companies selling at cost or

22  below cost prices, and large retailers doing high volume, low cost

23  business and establishing their own brands.

24     4.    Whether or not, when Hagen decided to implement the Hagen

25  Direct Program, several publicly traded companies like PetSmart,

26  Petco, and the publicly traded Central Garden and Pet Company

1  (which not only manufactured and imported many major brands but
2  also used it's wholly owned national distribution network to
3  directly sell those brands into retail) had already been selling
4  direct to retailers.

5      5.   Whether or not Hagen decided to implement the Hagen
6  Direct Program because Hagen determined that within a few years of
7  continuing to do business with the distributor model, Hagen would
8  go bankrupt or forced to downsize to a level at which it would make
9  no sense to continue in business.

10      6.   Whether or not all of Hagen's distributors received a
11  copy of the letter attached as the only exhibit to Plaintiff's
12  Complaint filed on or about August 22, 2008 (the "Complaint").

13      7.   Whether or not at the beginning of the distribution
14  relationship, defendant's Vice President of Sales visited Sam
15  Sarkissian at his Richmond warehouse and offered plaintiff the
16  Hagen line of products.   (Hagen comment: Not relevant.)

17      8.   Whether or not during the initial discussions regarding
18  the distribution agreement, Dieter Hagen told plaintiff that
19  defendant Hagen was a family owned company and that plaintiff would
20  be supported by Hagen and would "become like a family."   (Hagen
21  comment: Not relevant.)

22      9.   Whether or not during initial discussions, Dieter Hagen
23  was acting on behalf of the parent company Rolf C. Hagen, Inc. and
24  on behalf of defendant Rolf C. Hagen (USA) Corp.   (Hagen comment:
25  legal issue.)

26      10.   Whether or not defendant Hagen began distributing its

6

1 products in the United States in 1975. (Hagen's comment:
2 Irrelevant.)

3     11. Whether or not Hagen sold its products through a
4 distribution model in the United States because the country was too
5 large of an area to sell direct to retailers. (Hagen's comment:
6 Irrelevant.)

7     12. Whether or not at the time plaintiff became a distributor
8 of Hagen's products, Hagen was not selling or distributing its
9 products directly to retailers in plaintiff's distribution area.
10 (Hagen's comment: Irrelevant.)

11     13. Whether or not prior to 2007, Hagen had a uniform pricing
12 schedule for all of its distributors, comprised of a distributor
13 price and a "suggested dealer" (or retailer) price. (Hagen's
14 comment: Irrelevant; Plaintiff concedes that Hagen controlled
15 pricing. See I.B.4-5.)

16     14. Whether or not pursuant to this pricing schedule, Hagen
17 would sell its products to its distributors for 1/3 of its
18 suggested dealer price, and would offer additional discounts to
19 distributors. (Hagen's comment: Irrelevant; Plaintiff concedes
20 that Hagen controlled pricing. See I.B.4-5.)

21     15. Whether or not Hagen expected its distributors to support
22 the product line and give a "good representation" of Hagen's total
23 product mix.

24     16. Whether or not Hagen did not require its distributors to
25 distribute only Hagen products because this requirement would be
26 "impossible." (Hagen's comment: Irrelevant.)

17.    Whether or not in order to remain economically viable, Hagen's distributors had to distribute multiple manufacturers' products that were competitive with each other.  (Hagen's comment: Irrelevant.)

18.    Whether or not the Hagen company was a "family operation" that had personal relationships with its distributors, including plaintiff, that did business with its distributors "on a handshake."

19.    Whether or not Dieter Hagen had a "good relationship" with Sam Sarkissian.   (Hagen's comment: Irrelevant.)

20.    Whether or not Trevor Hagen, Hagen's Chief Operating Officer and general manager from 2001 to 2007, had "tremendous respect for Sam as an independent businessman.  (Hagen's comment: Irrelevant.)

21.    Whether or not over the years of the distribution relationship between plaintiff and defendant Hagen, Dieter Hagen, its' Vice President of Sales, never heard from anyone at Hagen that the relationship was not profitable for Hagen.  (Hagen's comment: Irrelevant.)

22.    Whether or not over the years of the distribution relationship between plaintiff and defendant Hagen, Dieter Hagen, its' Vice President of Sales, never heard from anyone at Hagen that plaintiff had failed to fairly represent the Hagen line with its dealers.   (Hagen's comment: Irrelevant.)

23.    Whether or not Hagen's decision to sell direct to retailers pursuant to the Hagen Direct Program had anything to do

1   with plaintiff's performance as a distributor of Hagen's products.

2   24.   Whether or not, pursuant to the distribution agreement,

3   the parties agreed that the parties' distribution relationship

4   would continue as long as plaintiff continued to use its best

5   efforts to promote and solicit the sale of Hagen's products, and

6   in fact distributed Hagen products throughout S&S Supplies' market

7   area through plaintiff's distribution facilities.

8   25.   Whether or not over the 15 years of the parties'

9   distribution relationship pursuant to the Distribution Agreement,

10  plaintiff purchased and distributed over $8,000,000.00 of Hagen

11  products to its retail customers.   (Hagen's comment: Irrelevant.)

12  26.   Whether or not, after entering into the Distribution

13  Agreement with Hagen, plaintiff expanded its Richmond, California

14  warehouse by an additional 7000 square feet to accommodate the

15  Hagen inventory and ultimately relocated to a larger 50,000 square

16  foot warehouse in Fairfield, California.

17  27.   Whether or not after entering into the Distribution

18  Agreement with Hagen, plaintiff increased its sales force and

19  purchased additional trucks to facilitate the promotion and

20  distribution of Hagen products.

21  28.   Whether or not, throughout the entirety of the

22  distribution relationship up until Hagen implemented the Hagen

23  Direct Program and offered its products directly to retailers of

24  plaintiff, plaintiff promoted Hagen's products and provided

25  distribution facilities in California and Washington over a total

26  of more than 15 years, and successfully marketed and sold Hagen's

1   products throughout its distribution area.

2       29.   Whether or not plaintiff took these actions with the
3   express understanding and agreement that Hagen would continue to
4   supply and ship its products to plaintiff for distribution to
5   plaintiff's retail customers throughout its market area in
6   California and the western United States.

7       30.   Whether or not plaintiff was informed by defendant Hagen,
8   or required under the Distribution Agreement to promote Hagen's
9   products before promoting products from other manufacturers.   Nor
10  was plaintiff ever notified or required by Hagen to instruct
11  plaintiff's salespeople to promote Hagen products ahead of
12  competing product lines.

13      31.   Whether or not the only remaining distribution of Hagen
14  products by plaintiff after implementation of the Hagen Direct
15  program, was the attempted distribution and sale of remaining Hagen
16  inventory in plaintiff's warehouse facilities.

17      32.   Whether or not after implementation of the Hagen Direct
18  Program, Hagen opened a 120,000 square foot distribution facility
19  in California in April 2007; prior to that time, Hagen had no
20  distribution facility west of the Mississippi River.   (Hagen's
21  comment: irrelevant.)

22      33.   Whether or not after implementation of the Hagen Direct
23  Program, Hagen "wouldn't be doing [its] job" if at least one of
24  plaintiff's retail customers didn't receive products directly from
25  Hagen.   (Hagen's comment: irrelevant.)

26      34.   Whether or not over the course of Trevor Hagen's duties

1  as COO of Hagen, he ever recommended to anyone at the company that
2  Hagen stop distributing its products through plaintiff.  (Hagen's
3  comment: irrelevant.)

4  B.    Disputed Facts Relevant to Plaintiff's Breach of Contract and
5        Breach of the Covenant of Good Faith and Fair Dealing Claims
6        1.    Whether or not any agreement was reached between
7  Plaintiff and Hagen, which included terms as alleged by Plaintiff
8  in its Complaint.

9        2.    Whether or not, assuming an agreement was reached between
10 Plaintiff and Hagen, the agreement was reached in 1993.

11       3.    Whether or not, Dieter Hagen was involved in the
12 selection of new distributors in the United States.

13       4.    Whether or not, Dieter Hagen negotiated any contract with
14 Sam Sarkissian.

15       5.    Whether or not, Trevor Hagen was involved in negotiating
16 the terms of any distribution relationships during the time in
17 which he was a regional sales manager.

18       6.    Whether or not, Trevor Hagen was involved with
19 negotiating the terms of any distribution relationship between
20 Hagen and Plaintiff.

21       7.    Whether or not, the general manager of Hagen, Joseph
22 Sesnovich, and/or his successor, Robert Baskinger, were responsible
23 for selecting distributors in the United States.

24       8.    Whether or not distributors were under any obligation to
25 Hagen to pass the discount that the distributor received from Hagen
26 to the retailer.

9. Whether or not Distributors were free to sell Hagen products to retailers at any price they chose.

10. Whether or not, assuming an agreement was reached between Plaintiff and Hagen, the agreement included a term requiring Hagen never to sell directly to retailers in the United States.

a. Whether or not, assuming there was an agreement which included a term requiring Hagen never to sell directly to retailers in the United States, Plaintiff agreed to a mutually binding obligation

b. Whether or not, assuming there was an agreement which included a term requiring Hagen never to sell directly to retailers in the United States, and assuming that Plaintiff agreed to a mutually binding obligation, Plaintiff complied with that obligation.

11. Whether or not, assuming an agreement was reached between Plaintiff and Hagen, it was also a term of the agreement that the agreement would continue as long as Plaintiff used its "best efforts" to promote and solicit the sale of Hagen's products, and in fact distributed Hagen's products.

a. Whether or not, assuming there is an agreement between Hagen and Plaintiff, Plaintiff fully performed its obligations under the so-called agreement, which Plaintiff has alleged in the Complaint was to use its best efforts to promote and sell Hagen's products.

b. Whether or not, assuming there was an agreement which included a term requiring Plaintiff to promote Hagen's

12

1  products, the parameters of Plaintiff's obligations in promoting
2  these products was discussed and agreed to by Hagen and Plaintiff.

3          c.    Whether or not, assuming there was an agreement
4  which included a term requiring Plaintiff to incur expense in
5  promoting Hagen products, Plaintiff actually incurred such expense
6  specific to Hagen products.

7      12.  Whether or not, assuming there was an agreement,
8  Plaintiff promoted competing product lines ahead of Hagen's
9  products.

10     13.  Whether or not Hagen contributed to Plaintiff's costs to
11 promote/market Hagen products.

12     14.  Whether or not, assuming an agreement was reached between
13 Plaintiff and Hagen, it was also a term of the agreement that
14 Plaintiff must open a warehouse in the Northwest region of the
15 United States.

16     15.  Whether or not, assuming an agreement was reached between
17 Plaintiff and Hagen, it was also a term of the agreement that
18 Plaintiff must expand its facilities.

19     16.  Whether or not, assuming there was an agreement which
20 included a term requiring Plaintiff to either expand its facilities
21 or open a new facility, the timing, location, size, and expense
22 related to such expansion and facility was discussed and agreed to
23 by Hagen and Plaintiff.

24     17.  Whether or not Hagen advised Sam Sarkissian that
25 expansion into the Northwest region of the United States would be
26 costly and possibly detrimental to Plaintiff's business.

13

18.   Whether or not, assuming an agreement was reached between Plaintiff and Hagen, it was also a term of the agreement that Plaintiff disclose its trade secrets to Hagen.

19.   Whether or not, assuming there is an agreement between Hagen and Plaintiff, and assuming that Plaintiff performed its obligations under the agreement, the letter attached to Plaintiff's Complaint establishes that Hagen terminated the agreement.

20.   Whether or not, assuming there is an agreement between Hagen and Plaintiff, assuming that Plaintiff performed its obligations under the agreement, and assuming that the letter attached to Plaintiff's Complaint establishes that Hagen terminated the agreement, the agreement was terminable-at-will.

21.   Whether or not, in February, 2007 Hagen launched its Hagen Direct Program, which provided a unified pricing system for distributors and retailers in the United States.

22.   Whether or not, retailers which purchased Hagen products from Plaintiff, could purchase those same products from other distributors during the time retailers purchased from Plaintiff.

23.   Whether or not some distributors continued to buy Hagen products after the launch of Hagen Direct.

24.   Whether or not, assuming there is an agreement between Hagen and Plaintiff, and assuming that Plaintiff performed its obligations under the agreement, Hagen breached the agreement by offering all retailers and distributors, including Plaintiff, the same pricing schedule to purchase Hagen products after the launch of the Hagen Direct program.

25. Whether or not the pricing terms for Plaintiff remained the same after Hagen implemented the Hagen Direct program.

26. Whether or not. Plaintiff contemplated continuing to distribute Hagen products after Hagen introduced the Hagen Direct program.

27. Whether or not, assuming there is an agreement between Hagen and Plaintiff and that Plaintiff performed its obligations under the agreement, Hagen breached the agreement by refusing to alter its refund policy as demanded by Plaintiff.

28. Whether or not, assuming there is an agreement between Hagen and Plaintiff, assuming that Plaintiff performed its obligations under the agreement, and assuming that Hagen breached the agreement, Plaintiff mitigated its damages by selling the "Disputed Inventory."

29. Whether or not Plaintiff paid all outstanding invoices that it owed to Hagen.

30. Whether or not Plaintiff still has an outstanding invoice amount owed to Hagen for approximately $20,000.

31. Whether or not Hagen's return policy provided that Hagen would refund a distributor for defective products and/or for wrapped/unopened products within 90 days from date of purchase.

32. Whether or not Hagen's return policy provided that Hagen would not refund a distributor for discontinued products or shop-worn products (unwrapped products).

33. Whether or not after the launch of the Hagen Direct program, Hagen offered to modify its return policy so that it was

1  more favorable to Plaintiff by allowing Plaintiff to return all
2  sealed, wrapped products that had been in Plaintiff's warehouse for
3  up to nine months from date of purchase.

4      34.   Whether or not Plaintiff demanded that Hagen accept a
5  return of all unsold Hagen products, even though some of the
6  products did not qualify for return because those products had been
7  opened, discontinued and/or in Plaintiff's possession for more than
8  9 months (and up to two years in some cases) (collectively, the
9  "Old Inventory").

10     35.   Whether or not Plaintiff demanded that Hagen accept the
11  Old Inventory and reimburse it for its net cost of $250,000.

12     36.   Whether or not Hagen offered Plaintiff $140,000 to
13  compensate it for the Old Inventory pursuant to the modification
14  to its return policy that it offered to Plaintiff.

15     37.   Whether or not Plaintiff rejected Hagen's offer to accept
16  $140,000 for the Old Inventory.

17     38.   Whether or not the Old Inventory is no longer eligible
18  to be accepted under Hagen's return policy, even as offered to be
19  modified.

20     39.   Whether or not Plaintiff's Old Inventory is presently
21  valued at $200,000.

22     40.   Whether or not in or about 1993, Plaintiff and Defendant
23  orally agreed that Plaintiff would distribute Plaintiff's pet
24  supply products.

25     41.   Whether or not Plaintiff's president, Sam Sarkissian,
26  ever discussed with Hagen the conditions for termination of the

16

1  alleged distribution agreement.

2       42.   Whether or not during initial discussions, plaintiff was
3  "guaranteed" by Dieter Hagen that defendant Hagen would never
4  distribute its products directly to retailers in the United States.

5       43.   Whether or not plaintiff ever told its salespeople that
6  they were required to promote Hagen's products before promoting
7  products from other manufacturers.

8       44.   Whether or not plaintiff could not force its salespeople
9  to promote Hagen products ahead of competing product lines.

10      45.   Whether or not Plaintiff's promotion of Hagen products
11 was any different from Plaintiff's promotion of other competing
12 product lines.

13      46.   Whether or not a term of the "Distribution Agreement"
14 consisted of a promise by Hagen to refrain from soliciting any of
15 Plaintiff's customers.

16      47.   Whether or not after the introduction of the Hagen Direct
17 Program, Plaintiff contemplated continuing to distribute Hagen
18 products.

19      48.   Whether or not the alleged "termination" letter attached
20 to Plaintiff's Complaint establishes that Hagen sought to terminate
21 Plaintiff as a distributor.

22      49.   Whether or not the terms of the alleged "termination"
23 letter established only a unified pricing and credit terms
24 schedule.

25      50.   Whether or not the pricing terms for Plaintiff remained
26 the same after Hagen implemented the Hagen Direct Program.

1    51.   Whether or not Hagen breached the alleged "Distribution
2  Agreement" by terminating the "Distribution Agreement," refusing
3  to accept the return of, or refund, the purchase price of the
4  "Disputed Inventory," and by unlawfully soliciting Plaintiff's
5  customers.   (Hagen comment: Compound.)

6    52.   Whether or not the February 2007 "Termination letter"
7  constituted a termination of the "Distribution Agreement."

8    53.   Whether  or  not  since  1993,  plaintiff  has  been  a
9  distributor of HAGEN products throughout the western United States
10  pursuant to a distribution agreement with defendant HAGEN.

11    54.   Whether  or  not  at  the  outset  of  the  distribution
12  relationship between defendant HAGEN and plaintiff, in discussions
13  between plaintiff's president, Sam Sarkissian and Dieter Hagen,
14  plaintiff was specifically assured that HAGEN would not offer its
15  products for sale directly to retailers in plaintiff's distribution
16  area, or anywhere in the United States, but would continue to
17  distribute its products only through plaintiff S&S and other
18  distributors at an established distributor pricing schedule.
19  (Hagen comment:   compound and contrary to allegations made in
20  complaint.

21    55.   Whether  or  not,  while  there  was  no  formal  written
22  agreement between the parties, the terms of the Distribution
23  Agreement were established verbally, and memorialized over the 15
24  years of the parties' performance under the Distribution Agreement
25  by  Hagen's  delivery  of  products  to  plaintiff's  Fairfield,
26  California and Seattle Washington distribution facilities, and

18

1  Hagen's submission of written invoices for payment, and by
2  plaintiff's payment for the products.

3      56.   Whether or not, pursuant to the distribution agreement,
4  plaintiff fully and faithfully performed its obligations under the
5  Distribution Agreement and incurred substantial expenses promoting
6  Hagen's products and providing distribution facilities in
7  California and Washington over a total of more than 15 years to
8  develop a valuable distributorship for the successful marketing and
9  sale of Hagen's products.

10     57.   Whether or not, until implementation of the Hagen Direct
11 Program, Hagen had never offered its products directly to
12 plaintiff's retail customers, but had distributed its products
13 through plaintiff pursuant to the Distribution Agreement.

14     58.   Whether or not, in or about February 2007, without cause
15 and with no prior notice to plaintiff, and in violation of its
16 Distribution Agreement with plaintiff, defendant Hagen provided
17 written notice to plaintiff of its unilateral decision to
18 discontinue its distribution relationship with plaintiff (the
19 "Termination Notice"), notwithstanding that plaintiff had and
20 continued to fully and faithfully perform its obligations under the
21 Distribution Agreement

22     59.   Whether or not the Termination Notice introduced a new
23 distribution program being implemented by Hagen, entitled the
24 "Hagen Direct" program.

25     60.   Whether or not, under the "Hagen Direct" program, Hagen
26 would be offering the same products previously sold to plaintiff

19

1  under the Distribution Agreement directly to plaintiff's
2  independent retailer customers at substantially reduced prices
3  (i.e., as much as 40% discounted prices).

4      61.  Whether or not the Hagen Direct Program offered the same
5  price to dealers and distributors and eliminated distributor
6  pricing.

7      62.  Whether or not immediately prior to delivery of the
8  Termination Notice, Hagen had shipped, and plaintiff had purchased
9  in excess of $200,000 of products at Hagen's established pricing
10  schedule in accordance with its customary and established
11  distribution relationship with Hagen ("the Disputed Inventory").

12     63.  Whether or not Hagen refused, and has continued to refuse
13  to accept the return of the Disputed Inventory, or to refund the
14  purchase price paid by plaintiff for the Disputed Inventory.

15     64.  Whether or not, while plaintiff's president, Sam
16  Sarkissian never specifically discussed termination of the
17  Distribution Agreement with Dieter Hagen or other representatives
18  of defendant Hagen, the understanding reached at the outset of the
19  distribution relationship was that the relationship would continue
20  as long as plaintiff continued to use its best efforts to promote
21  and solicit the sale of Hagen's products, and in fact distributed
22  Hagen products throughout S&S Supplies' market area.

23     65.  Whether or not by implementing the Hagen Direct Program
24  and offering the full line of Hagen products directly to
25  plaintiff's retailers at a "unified pricing schedule", Hagen
26  unilaterally eliminated all of the economic benefits of the

20

1  Distribution Agreement for plaintiff.   Under the Hagen Direct
2  Program, Hagen marked its products for sale directly to plaintiff's
3  retailers under a "unified pricing schedule" that it would also
4  purportedly offer to plaintiff, thus eliminating plaintiff's
5  ability to realize any profit from the continued distribution and
6  sale of Hagen products to plaintiff's retail customers.

7  C.   Hagen's Disputed Factual Issues Relevant To Plaintiff's
8       Declaratory Relief Claim

9       1.   Whether or not Plaintiff's request for relief, to
10 determine whether any agreement exists and if Hagen breached it,
11 is appropriate.

12       **V.   NON-DISCOVERY MOTIONS TO THE COURT AND RESOLUTION**

13      A single motion for summary judgment was tendered by the
14 defendant.

15      As to the contract claims, defendant conceded that the
16 question of whether any contract existed and was enforceable was
17 a triable question.   Defendant argued that, assuming that there
18 was an enforceable contract, there was nonetheless no material
19 question regarding breach.   The court rejected this argument in
20 part.   The court held that there was a triable question as to
21 whether the contract explicitly prohibited defendant from
22 selling directly to retailers.   Order of Feb. 4, 2010 at 14.
23 There was also a triable question as to whether the contract
24 contained implicit terms prohibiting termination except upon
25 reasonable notice or for good cause.   Id. at 23.   The court
26 granted partial summary judgment, however, rejecting plaintiff's

1 | contention that even upon reasonable notice, the contract could
2 | be terminated only for cause. Id. Finally, a triable question
3 | existed as to whether defendant had good cause or defendant had
4 | provided reasonable notice. Id. at 25-26. Pursuant to these
5 | findings, the court held that at most, plaintiff could seek
6 | damages for the failure to provide reasonable notice of the
7 | termination of the contract. Id. at 27.

8 | The court granted defendant's motion as to the remaining
9 | claims. The trade secrets claims failed because no evidence
10 | indicated that defendant used confidential information. Id. at
11 | 29. The intentional interference claims failed because
12 | plaintiff provided no evidence of contracts with third parties
13 | or of unlawful conduct by defendant. Id. at 31-33. The unfair
14 | competition claim failed because plaintiff had not identified
15 | unfair, unlawful, or fraudulent conduct. Id. at 31.
16 | Plaintiff's claim for injunctive relief failed because plaintiff
17 | was not entitled to such relief under any of the surviving
18 | claims. Id. at 34.

19 | Thus, the surviving claims are for breach of contract,
20 | breach of the implied covenant of good faith and fair dealing,
21 | unjust enrichment, and declaratory judgment.

22 | **VI. DISPUTED EVIDENTIARY ISSUES**

23 | Neither party suggests that there will be disputed
24 | evidentiary issues.

25 | **VII. SPECIAL FACTUAL INFORMATION**

26 | None.

22

1                         **VIII.  RELIEF SOUGHT**

2       Plaintiff seeks compensatory damages, disgorgement of

3 profits, costs, and a declaratory judgment that defendant has

4 breached the agreement.

5       Defendant seeks judgment in its favor.

6       Both parties seek costs.

7                         **IX.  POINTS OF LAW**

8       (a) The elements, standards, and burdens of proof of a

9 claim for breach of contract under California law.

10       (b) The elements, standards, and burdens of proof of a

11 claim for breach of the implied covenant of good faith and fair

12 dealing under California law.

13       (c) The elements, standards, and burdens of proof of a

14 claim for declaratory relief under California law.

15       (d) The elements, standards, and burdens of proof of a

16 claim for unjust enrichment under California law.

17       (e) The elements, standards, and burdens of proof for the

18 defense of the statute of frauds under California law.

19       (f) The elements, standards, and burdens of proof for the

20 defense of waiver of breach under California law.

21       (g) The elements, standards, and burdens of proof for the

22 defense of impossibility of performance under California law.

23       (h) The elements, standards, and burdens of proof for the

24 defense of mistake under California law.

25       (i) The elements, standards, and burdens of proof for the

26 defense of unclean hands under California law.

1    (j) The elements, standards, and burdens of proof for the
2  defense of laches under California law.

3    (k) The elements, standards, and burdens of proof for the
4  defense of failure to mitigate damages under California law.

5    (l) As to the claim for unjust enrichment, the elements,
6  standards, and burdens of proof for the defense of adequate
7  remedy at law.

8    ANY CAUSES OF ACTION OR AFFIRMATIVE DEFENSES NOT EXPLICITLY
9  ASSERTED IN THE PRETRIAL ORDER UNDER POINTS OF LAW AT THE TIME
10  IT BECOMES FINAL ARE DISMISSED, AND DEEMED WAIVED.

11                      **X.   ABANDONED ISSUES**

12    None.

13                      **XI.   WITNESSES**

14    Plaintiff anticipates calling the following witnesses:
15    See attachment "A".

16    Defendant anticipates calling the following witnesses:
17    See attachment "B".

18    Each party may call a witness designated by the other.

19    A.    No other witnesses will be permitted to testify
20  unless:

21    (1)   The party offering the witness demonstrates that the
22  witness is for the purpose of rebutting evidence which could not
23  be reasonably anticipated at the Pretrial Conference, or

24    (2)   The witness was discovered after the Pretrial
25  Conference and the proffering party makes the showing required
26  in "B" below.

24

1      B.     Upon the post-Pretrial discovery of witnesses, the

2  attorney shall promptly inform the court and opposing parties of

3  the existence of the unlisted witnesses so that the court may

4  consider at trial whether the witnesses shall be permitted to

5  testify.   The evidence will not be permitted unless:

6            (1)   The witnesses could not reasonably have been

7  discovered prior to Pretrial;

8            (2)   The court and opposing counsel were promptly

9  notified upon discovery of the witnesses;

10           (3)   If time permitted, counsel proffered the

11  witnesses for deposition;

12           (4)   If time did not permit, a reasonable summary of

13  the witnesses' testimony was provided opposing counsel.

14              **XII.   EXHIBITS, SCHEDULES AND SUMMARIES**

15      Plaintiff contemplates the following by way of exhibits:

16      See attachment "C".

17      Defendant contemplates the following by way of exhibits:

18      See attachment "D".

19      A.     No other exhibits will be permitted to be introduced

20  unless:

21           (1)   The party proffering the exhibit demonstrates

22  that the exhibit is for the purpose of rebutting evidence which

23  could not be reasonably anticipated at the Pretrial Conference,

24  or

25

26

1          (2)   The exhibit was discovered after the Pretrial
2    Conference and the proffering party makes the showing required
3    in paragraph "B," below.

4          B.   Upon the post-Pretrial discovery of exhibits, the
5    attorneys shall promptly inform the court and opposing counsel
6    of the existence of such exhibits so that the court may consider
7    at trial their admissibility.  The exhibits will not be received
8    unless the proffering party demonstrates:

9          (1)   The exhibits could not reasonably have been
10   discovered prior to Pretrial;

11         (2)   The court and counsel were promptly informed of
12   their existence;

13         (3)   Counsel forwarded a copy of the exhibit(s) (if
14   physically possible) to opposing counsel.  If the exhibit(s) may
15   not be copied, the proffering counsel must show that he has made
16   the exhibit(s) reasonably available for inspection by opposing
17   counsel.

18         As to each exhibit, each party is ordered to exchange
19   copies of the exhibit not later than fifteen (15) days from the
20   date of this Pretrial Order.  Each party is then granted ten
21   (10) days to file with the court and serve on opposing counsel
22   any objections to said exhibits.  In making said objections, the
23   party is to set forth the grounds for the objection.  As to each
24   exhibit which is not objected to, it shall be marked and
25   received into evidence and will require no further foundation.
26

26

1  Each exhibit which is objected to will be marked for
2  identification only.

3      In addition to electronically filing said objections, if
4  any, the objections must be submitted by email, as an attachment
5  in Word or WordPerfect format, to: <u>arivas@caed.uscourts.gov</u>.

6      The attorney for each party is directed to appear before
7  and present an original and one (1) copy of said exhibit to Ana
8  Rivas, Deputy Courtroom Clerk, not later than 10:30 a.m. on the
9  date set for trial.  All exhibits shall be submitted to the
10 court in binders.  Plaintiff's exhibits shall be listed
11 numerically.  Defendant's exhibits shall be listed
12 alphabetically.  The parties shall use the standard exhibit
13 stickers provided by the court:  pink for plaintiff and blue for
14 defendant.

15                  **XIII.   DISCOVERY DOCUMENTS**

16     Plaintiff presently anticipates that the following
17 discovery documents may be offered at trial:

18     1.   Interrogatory Responses:  Defendant Hagen's Responses
19 to Interrogatories 1, 2, 3, 4, 5, 6, 9, 10 and 17.

20     2.   Portions of Deposition Transcripts:

21          a.   Testimony from the deposition transcript from the
22 Dieter Hagen deposition taken on August 18, 2009 contained on
23 pages 16, 25-28, 31-32, 34, 48-50, 53-57, 61, 64-67, 85 and
24 123-124.

25

26

                                27

1              b.    Testimony from the deposition transcript from the
2  Trevor Hagen deposition taken on August 18, 2009 contained on
3  pages 13, 17, 31, 37-39, 43-46, 66-67, 70-79, 82-84, 99 and 105.
4        Defendants:   none, except for impeachment purposes.

### XIV.   FURTHER DISCOVERY OR MOTIONS

6        None.

### XV.   STIPULATIONS

8        None.

### XVI.   AMENDMENTS/DISMISSALS

10        None.

### XVII.   FURTHER TRIAL PREPARATION

12       A.    Counsel are directed to Local Rule 285 regarding the
13  contents of and the time for filing trial briefs.

14       B.    Counsel are informed that the court has prepared a set
15  of standard jury instructions.  In general, they cover all
16  aspects of the trial except those relating to the specific
17  claims of the complaint.  Accordingly, counsel need not prepare
18  instructions concerning matters within the scope of the prepared
19  instructions.  A copy of the prepared instructions is given to
20  the parties at the Pretrial Conference.

21       B.    For all cases tried to the court, counsel are ordered
22  to file and serve Proposed Findings of Fact and Conclusions of
23  Law not later than ten (10) days prior to the first date of
24  trial.

25       C.    Counsel are further directed that their specific jury
26  instructions shall be filed fourteen (14) calendar days prior to

28

1  the date of trial.  As to any instructions counsel desires to
2  offer, they shall be prepared in accordance with Local Rule
3  163(b)(1) which provides:

4  "Two copies of the instructions shall be submitted.
5  One copy shall be electronically filed as a .pdf
6  document and shall contain each instruction on a
7  separate page, numbered and identified as to the party
8  presenting it. Each instruction shall cite the
9  decision, statute, ordinance, regulation or other
10  authority supporting the proposition stated in the
11  instruction."

12  The second copy ("jury copy") shall be submitted by e-mail
13  to lkkorders@caed.uscourts.gov.

14  **In addition, counsel shall provide copies of proposed forms**
15  **of verdict, including special verdict forms, at the time the**
16  **proposed jury instructions are filed with the court.**

17  D.    It is the duty of counsel to ensure that any
18  deposition which is to be used at trial has been filed with the
19  Clerk of the Court.  Counsel are cautioned that a failure to
20  discharge this duty may result in the court precluding use of
21  the deposition or imposition of such other sanctions as the
22  court deems appropriate.

23  E.    The parties are ordered to file with the court and
24  exchange between themselves not later than one (1) week before
25  the trial a statement designating portions of depositions
26

29

1  intended to be offered or read into evidence (except for
2  portions to be used only for impeachment or rebuttal).

3       F.   The parties are ordered to file with the court and
4  exchange between themselves not later than one (1) week before
5  trial the portions of answers to interrogatories which the
6  respective parties intend to offer or read into evidence at the
7  trial (except portions to be used only for impeachment or
8  rebuttal).

9       G.   The court has extensive audiovisual equipment
10  available.  Any counsel contemplating its use shall contact the
11  court's Telecommunications Manager, Andre Carrier, at (916) 930-
12  4223, at least two weeks in advance of trial to receive the
13  appropriate training.

14                  **XVIII.  SETTLEMENT NEGOTIATIONS**

15       A Settlement Conference is **SET** before the Honorable Gregory
16  G. Hollows, United States Magistrate Judge, on May 25, 2010 at
17  9:00 a.m.  Counsel are directed to submit settlement conference
18  statements to the settlement judge **not later than seven (7) days**
19  **prior to the conference.**  At counsel's option, such statements
20  may be submitted in confidence pursuant to Local Rule 270(d).

21       Each party is directed to have a principal capable of
22  disposition at the Settlement Conference or to be fully
23  authorized to settle the matter on any terms and at the
24  Settlement Conference.

25                    **XIX.  AGREED STATEMENTS**

26       None.

                              30

1                    **XX.   SEPARATE TRIAL OF ISSUES**

2          The matter of punitive damages will be severed and will be

3     heard immediately following the jury's determination as to

4     actual damages.

5              **XXI.   IMPARTIAL EXPERTS/LIMITATION OF EXPERTS**

6          None.

7                        **XXII.   ATTORNEYS' FEES**

8          Neither party is seeking attorneys' fees.

9                        **XXIII.   MISCELLANEOUS**

10         None.

11             **XXIV.   ESTIMATE OF TRIAL TIME/TRIAL DATE**

12         Trial by the court is continued to July 7, 2010, at 10:30

13    a.m., in Courtroom No. 4.  The parties represent in good faith

14    that the trial will take approximately three (3) days.

15         Each party is to file with the court a proposed statement

16    of fact and conclusions of law no later than seven (7) days

17    prior to trial.

18         Counsel are to call Ana Rivas, Courtroom Deputy, at (916)

19    930-4133, one week prior to trial to ascertain status of trial

20    date.

21             **XXV.   OBJECTIONS TO PRETRIAL ORDER**

22         Each party is granted fifteen (15) days from the effective

23    date of this Pretrial Order [Tentative] to object to or augment

24    same.  Each party is also granted five (5) days thereafter to

25    respond to the other party's objections.  If no objections or

26

                                31

1  additions are made, the Tentative Pretrial Order will become
2  final without further order of the court.

3      The parties are reminded that pursuant to Federal Rule of
4  Civil Procedure 16(e), this order shall control the subsequent
5  course of this action and shall be modified only to prevent
6  manifest injustice.

7                    **XXVI.   OTHER**

8      All time limits and dates that refer to the Pretrial Order
9  refer to the date this Pretrial Order [Tentative] is filed and
10 not the date an amended order, if any, is filed.

11     IT IS SO ORDERED.

12     DATED: April 16, 2010.

14                              LAWRENCE K. KARLTON
15                              SENIOR JUDGE
16                              UNITED STATES DISTRICT COURT

32

Case 2:08-cv-02201-LKK-JFM    Document 66    Filed 04/16/10    Page 33 of 46
Case 2:08-cv-02201-LKK-JFM    Document 65    Filed 04/15/2010    Page 33 of 46
Case 2:08-cv-02201-LKK-JFM    Document 45    Filed 02/01/2010    Page 1 of 4

1 | Christopher W. Sweeney (SBN 143217)
LAW OFFICES OF CHRISTOPHER W. SWEENEY
2 | 1500 Oliver Road, Suite K, PMB 321
Fairfield, CA 94534
3 | Telephone: (707) 435-1244
Facsimile: (707) 435-1245
4 | Email: cwslaw@comcast.net

5 | Attorney for Plaintiff
BOLAND, INC., dba S&S SUPPLIES
6

7

8 | UNITED STATES DISTRICT COURT

9 | EASTERN DISTRICT OF CALIFORNIA

10

11 | BOLAND, INC., a California corporation dba    ) Case No. 2:08-CV-02201-LKK-JFM
S&S SUPPLIES,                                    ) (E-filing)
12                                               )
                                                 ) PLAINTIFF's WITNESS LIST
13                Plaintiff,                      ) (Attachment "A" to Plaintiff Boland, Inc.'s
                                                 ) Separate PreTrial Statement)
14         vs.                                    )
                                                 ) Date: February 16, 2010
15 | ROLF C. HAGEN (USA) CORP., and DOES 1       ) Time: 1:30 p.m.
through 50, inclusive,                           ) Courtroom: 4
16                                               ) [The Hon. Lawrence K. Karlton]
                                                 )
17 |              Defendants.                     )
_____      )

18

19 |      Plaintiff BOLAND INC., a California corporation, dba S&S SUPPLIES and ROLF C.

20 | HAGEN (USA) CORP. respectfully submits this Witness List as Attachment "A" to Plaintiff's

21 | Separate PreTrial Statement in advance of the Final Pretrial Conference scheduled for February 16,

22 | 2010 in the above captioned matter pursuant to the Court's Status (Pretrial Scheduling) Conference

23 | Order entered in the matter on December 18, 2008.

24 |      Plaintiff may call the following prospective witnesses at trial:

25

26 |      1.  Sam Sarkissian
              S&S Supplies
27            2750 Maxwell Way
              Fairfield, CA 94534
28

ATTACHMENT "A"
1
Plaintiff's Witness List - CASE NO. 2:08-CV-02201-LKK-JFM (E-filing)

Case 2:08-cv-02201-LKK-JFM   Document 66   Filed 04/16/10   Page 34 of 46
Case 2:08-cv-02201-LKK-JFM   Document 65   Filed 04/15/2010   Page 34 of 46

Case 2:08-cv-02201-LKK-JFM   Document 45   Filed 02/01/2010   Page 2 of 4

1

2. Greg Sarkissian
   S&S Supplies
2  2750 Maxwell Way
   Fairfield, CA 94534

3

4  3. Linda Kusaka
   S&S Supplies
5  2750 Maxwell Way
   Fairfield, CA 94534

6

7  4. Mike Copeland
   S&S Supplies
8  2750 Maxwell Way
   Fairfield, CA 94534

9

10 5. Razmik Arakel
   S&S Supplies
11 2750 Maxwell Way
   Fairfield, CA 94534

12

13 6. Jim Pringle
   S&S Supplies
14 2750 Maxwell Way
   Fairfield, CA 94534

15

16 7. William C. Edic, C.P.A.
   P.O. Box 325
17 Homewood, California 96141
   **(Plaintiff's Expert Witness)**

18

19 8. Dieter Hagen
   ROLF C. HAGEN (USA) CORP.
20 305 Forbes Blvd.
   Mansfield, MA 02048

21

22 9. Trevor Hagen
   ROLF C. HAGEN (USA) CORP.
23 305 Forbes Blvd.
   Mansfield, MA 02048

24

25 10. Rolf C. Hagen Sr.
    ROLF C. HAGEN (USA) CORP.
26 305 Forbes Blvd.
   Mansfield, MA 02048

27

28

Case 2:08-cv-02201-LKK-JFM   Document 66   Filed 04/16/10   Page 35 of 46
Case 2:08-cv-02201-LKK-JFM   Document 65   Filed 04/15/2010   Page 35 of 46
Case 2:08-cv-02201-LKK-JFM   Document 45   Filed 02/01/2010   Page 3 of 4

1

11. Rolf C. Hagen Jr.
   ROLF C. HAGEN (USA) CORP.
2   305 Forbes Blvd.
   Mansfield, MA 02048
3

4  12. Robert ("Bob") DeRusha
   ROLF C. HAGEN (USA) CORP.
5   305 Forbes Blvd.
   Mansfield, MA 02048
6

7  13. Robert Baskinger
   ROLF C. HAGEN (USA) CORP.
8   305 Forbes Blvd.
   Mansfield, MA 02048
9

10  14. Jeff Sutherland
   Central Garden & Pet
11   1340 Treat Boulevard
   Suite 600
12   Walnut Creek, CA 94597

13  15. Glen W. Novotny
   Telegraph Hill Partners
14   360 Post Street
   Suite 601
15   San Francisco, CA 94108
   **(Defendant's Expert Witness)**
16

17  16. Ronald G. Pomares
   Pomares Gardner an Accounting Corporation
18   555 Capitol Mall
   Suite 400
19   Sacramento, CA 95814
   **(Defendant's Expert Witness)**
20

21  17. Plaintiff reserves the right to call any witness identified by Defendant in its Separate
22      PreTrial Statement or called to testify at trial.

23  //

24  //

25  //

26  //

27  //

28

Case 2:08-cv-02201-LKK-JFM  Document 66  Filed 04/16/10  Page 36 of 46
Case 2:08-cv-02201-LKK-JFM  Document 65  Filed 04/15/2010  Page 36 of 46
Case 2:08-cv-02201-LKK-JFM  Document 45  Filed 02/01/2010  Page 4 of 4

1    18. Plaintiff reserves the right to call any witness whose identity is discovered by plaintiff
2    after the date of this Pretrial Statement.

3                                            Respectfully submitted,

4    Dated: February 1, 2010                 LAW OFFICES OF
5                                            CHRISTOPHER W. SWEENEY

6

7                                            By: __/s/ Christopher W. Sweeney____
8                                                 Christopher W. Sweeney
                                                 Attorney for Plaintiff BOLAND, INC.,
9                                                 dba S&S SUPPLIES

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff's Witness List - CASE NO. 2:08-CV-02201-LKK-JFM (E-filing)

Case 2:08-cv-02201-LKK-JFM   Document 66   Filed 04/16/10   Page 37 of 46
Case 2:08-cv-02201-LKK-JFM   Document 65   Filed 04/15/2010   Page 37 of 46
Case 2:08-cv-02201-LKK-JFM   Document 52   Filed 02/12/2010   Page 1 of 2

1  SEYFARTH SHAW LLP
   Lawrence E. Butler (SBN: 111043)
2  E-Mail: lbutler@seyfarth.com
   Andrea K. Anapolsky (SBN: 238297)
3  E-Mail: aanapolsky@seyfarth.com
   560 Mission Street, Suite 3100
4  San Francisco, California 94105
   Telephone: (415) 397-2823
5  Facsimile: (415) 397-8549

6  Attorneys for Defendant
   ROLF C. HAGEN (USA) CORP.
7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10  BOLAND, INC., a California corporation dba )  Case No. 2:08-CV-02201-LKK-JFM
    S&S SUPPLIES,                             )
11                                            )  DEFENDANT'S AMENDED AND
                                              )  RESTATED WITNESS LIST
12              Plaintiff,                     )  (Attached as Attachment A to
                                              )  Defendant's Separate Pre-Trial
13       v.                                    )  Statement)
                                              )
14  ROLF C. HAGEN (USA) CORP., and DOES 1 )
    through 50, inclusive,                    )
15                                            )  Date:   February 16, 2010
              Defendants.                      )  Time:   1:30 p.m.
16                                            )  Judge: Hon. Lawrence K. Karlton
                                              )
17

18       ROLF C. HAGEN (USA) CORP. ("Hagen") respectfully submits this Witness List as

19  Attachment "A" to Hagen's Separate Pre-Trial Statement in advance of the Final Pretrial

20  Conference scheduled for February 16, 2010 in the above captioned matter pursuant to the

21  Court's Status (Pretrial Scheduling) Conference Order entered in the matter on December 18,

22  2008.

23       Hagen may call the following prospective witnesses at trial:

24       1.      Sam Sarkissian
                 S&S Supplies
25               2750 Maxwell Way
                 Fairfield, CA 94534
26
         2.      Greg Sarkissian
27               S&S Supplies
                 2750 Maxwell Way
28               Fairfield, CA 94534

                              ATTACHMENT "B"

Case 2:08-cv-02201-LKK-JFM   Document 66   Filed 04/16/10   Page 38 of 46
Case 2:08-cv-02201-LKK-JFM   Document 65   Filed 04/15/2010   Page 38 of 46
Case 2:08-cv-02201-LKK-JFM   Document 52   Filed 02/12/2010   Page 2 of 2

3.   Linda Kusaka
     S&S Supplies
     2750 Maxwell Way
     Fairfield, CA 94534

4.   Dieter Hagen
     ROLF C. HAGEN (USA) CORP.
     305 Forbes Blvd.
     Mansfield, MA 02048

5.   Trevor Hagen
     ROLF C. HAGEN (USA) CORP.
     305 Forbes Blvd.
     Mansfield, MA 02048

6.   Ronald G. Pomares
     555 Capitol Mall, Suite 400
     Sacramento, CA 95814

7.   Lynne Carlino
     ROLF C. HAGEN (USA) CORP.
     305 Forbes Blvd.
     Mansfield, MA 02048

8.   Glen W. Novotny
     Telegraph Hill Partners
     360 Post Street
     Suite 601
     San Francisco, CA 94108

Hagen reserves the right to call any witness identified by Plaintiff in its Separate Pre-Trial Statement or called to testify at trial.

Hagen also reserves the right to call any witness whose identity is discovered by Hagen after the date of this Pre-Trial Statement.

DATED: February 12, 2010                    SEYFARTH SHAW LLP

                                            /s/ Andrea K. Anapolsky
                                            By_____
                                               Lawrence E. Butler
                                               Andrea K. Anapolsky
                                            Attorneys for Defendant
                                            ROLF C. HAGEN (USA) CORP.

2

Case 2:08-cv-02201-LKK-JFM   Document 66   Filed 04/16/10   Page 39 of 46
Case 2:08-cv-02201-LKK-JFM   Document 65   Filed 04/15/2010   Page 39 of 46

Case 2:08-cv-02201-LKK-JFM   Document 46   Filed 02/01/2010   Page 1 of 5

1  Christopher W. Sweeney (SBN 143217)
   LAW OFFICES OF CHRISTOPHER W. SWEENEY
2  1500 Oliver Road, Suite K, PMB 321
   Fairfield, CA 94534
3  Telephone: (707) 435-1244
   Facsimile: (707) 435-1245
4  Email: cwslaw@comcast.net

5  Attorney for Plaintiff
   BOLAND, INC., dba S&S SUPPLIES
6

7

8              UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11 BOLAND, INC., a California corporation dba    )   Case No. 2:08-CV-02201-LKK-JFM
   S&S SUPPLIES,                                 )   (E-filing)
12                                               )
                                                 )   PLAINTIFF's EXHIBIT LIST
13                Plaintiff,                      )   (Attachment "B" to Plaintiff Boland, Inc.'s
                                                 )   Separate PreTrial Statement)
14       vs.                                      )
                                                 )   Date: February 16, 2010
15 ROLF C. HAGEN (USA) CORP., and DOES 1         )   Time: 1:30 p.m.
   through 50, inclusive,                        )   Courtroom: 4
16                                               )   [The Hon. Lawrence K. Karlton]
                 Defendants.                      )
17                                               )

18

19       Plaintiff BOLAND INC., a California corporation, dba S&S SUPPLIES and ROLF C.

20 HAGEN (USA) CORP. respectfully submits this Exhibit List as Attachment "B" to Plaintiff's

21 Separate PreTrial Statement in advance of the Final Pretrial Conference scheduled for February 16,

22 2010 in the above captioned matter pursuant to the Court's Status (Pretrial Scheduling) Conference

23 Order entered in the matter on December 18, 2008.

24       Plaintiff presently expects to offer the following documents and exhibits at trial:

25       1.       Emails dated March 22, 2007 through March 27, 2007 between and among Sam

26 Sarkissian, Dieter Hagen, Trevor Hagen and Linda Kusaka (Plaintiff's Bates Stamp Nos. P-0011

27 through P-0089).

28

                              ATTACHMENT "C"
                                    1

Case 2:08-cv-02201-LKK-JFM   Document 66   Filed 04/16/10   Page 40 of 46
Case 2:08-cv-02201-LKK-JFM   Document 65   Filed 04/15/2010   Page 40 of 46

Case 2:08-cv-02201-LKK-JFM   Document 46   Filed 02/01/2010   Page 2 of 5

2.      Purchase Order Detail Report for Hagen Purchases From 1993 to 2007 (Plaintiff's

Bates Stamp Nos. P-CONFIDENTIAL 0020252 through 0021707).

3.      Vendor/Customer Summary Report/Hagen Profits From 1993 to 2008 (Plaintiff's

Bates Stamp Nos. P-CONFIDENTIAL 0021708 through 0021727).

4.      Boland Sales and Profits Summary for 1993 through 2009 (Plaintiff's Bates Stamp

No. P-CONFIDENTIAL 0021728).

5.      Summary History Inquiry Report for Sales vs. Purchases From 1993 to 2008

(Plaintiff's Bates Stamp Nos. P-CONFIDENTIAL 0021729 through 0021745).

6.      Rolf C. Hagen (USA) Inc. Facsimile Transmittal Sheet dated January 2, 2007

(Plaintiff's Bates Stamp No. P- CONFIDENTIAL 0020251).

7.      Report of Disputed Inventory Remaining as of February 1, 2007 (Plaintiff's Bates

Stamp Nos. P-CONFIDENTIAL 0021746 through 0021763).

8.      1995 Detail Summary Report of Costs and Sales of Hagen Products (Plaintiff's Bates

Stamp Nos. P-CONFIDENTIAL 001692 through 003113).

9.      1996 Detail Summary Report of Costs and Sales of Hagen Products (Plaintiff's Bates

Stamp Nos. P-CONFIDENTIAL 003114 through 004546).

10.      1997 Detail Summary Report of Costs and Sales of Hagen Products (Plaintiff's Bates

Stamp Nos. P-CONFIDENTIAL 004547 through 006136).

11.      1998 Detail Summary Report of Costs and Sales of Hagen Products (Plaintiff's Bates

Stamp Nos. P-CONFIDENTIAL 006137 through 007804).

12.      1999 Detail Summary Report of Costs and Sales of Hagen Products (Plaintiff's Bates

Stamp Nos. P-CONFIDENTIAL 007805 through 009901).

//

Plaintiff's Exhibit List - CASE NO. 2:08-CV-02201-LKK-JFM (E-filing)

Case 2:08-cv-02201-LKK-JFM   Document 66   Filed 04/16/10   Page 41 of 46
Case 2:08-cv-02201-LKK-JFM   Document 65   Filed 04/15/2010   Page 41 of 46

Case 2:08-cv-02201-LKK-JFM   Document 46   Filed 02/01/2010   Page 3 of 5

13.   2000 Detail Summary Report of Costs and Sales of Hagen Products (Plaintiff's Bates Stamp Nos. P-CONFIDENTIAL 009902 through 0011651).

14.   2001 Detail Summary Report of Costs and Sales of Hagen Products (Plaintiff's Bates Stamp Nos. P-CONFIDENTIAL 0011652 through 0013020).

15.   2002 Detail Summary Report of Costs and Sales of Hagen Products (Plaintiff's Bates Stamp Nos. P-CONFIDENTIAL 0013021 through 0014480).

16.   2003 Detail Summary Report of Costs and Sales of Hagen Products (Plaintiff's Bates Stamp Nos. P-CONFIDENTIAL 0014480 through 0016039).

17.   2004 Detail Summary Report of Costs and Sales of Hagen Products (Plaintiff's Bates Stamp Nos. P-CONFIDENTIAL 0016039 through 0017385).

18.   2005 Detail Summary Report of Costs and Sales of Hagen Products (Plaintiff's Bates Stamp Nos. P-CONFIDENTIAL 0017385 through 0018604).

19.   2006 Detail Summary Report of Costs and Sales of Hagen Products (Plaintiff's Bates Stamp Nos. P-CONFIDENTIAL 0018605 through 0019733).

20.   2007 Detail Summary Report of Costs and Sales of Hagen Products (Plaintiff's Bates Stamp Nos. P-CONFIDENTIAL 0019734 through 0020144).

21.   2008 Detail Summary Report of Costs and Sales of Hagen Products (Plaintiff's Bates Stamp Nos. P-CONFIDENTIAL 0021764 through 0021766).

22.   2009 Detail Summary Report of Costs and Sales of Hagen Products (Plaintiff's Bates Stamp Nos. P-CONFIDENTIAL 0021767 through 0021768).

23.   Compensatory Damages Report, dated July 28, 2009, prepared by Plaintiff's expert William C. Edic, CPA, with attached Exhibits (Report and Exhibits total 35 pages).

//

Case 2:08-cv-02201-LKK-JFM   Document 66   Filed 04/16/10   Page 42 of 46
Case 2:08-cv-02201-LKK-JFM   Document 65   Filed 04/15/2010   Page 42 of 46
Case 2:08-cv-02201-LKK-JFM   Document 46   Filed 02/01/2010   Page 4 of 5

24.    Documents establishing the profits or financial condition of defendant HAGEN that will be requested for production at trial pursuant to subpoena pursuant to California Civil Code § 3295(c).

25.    Deposition Transcript and Exhibits to the Deposition of Dieter Hagen.

26.    Deposition Transcript and Exhibits to the Deposition of Trevor Hagen.

27.    Spreadsheet of Hagen Products (Defendant's Bates Stamp Nos. RH CONFIDENTIAL 0000001 through 0000004).

28.    Rolf C. Hagen (USA) Corp. Invoice dated January 15, 2007 (Defendant's Bates Stamp Nos. RH CONFIDENTIAL 0000005 through 0000009).

29.    Gold Dealer 2005 Program Guidelines (Defendant's Bates Stamp No. RH 0000010).

30.    Spreadsheet of Hagen Products (Defendant's Bates Stamp No. RH CONFIDENTIAL 00000011).

31.    Spreadsheet of Hagen Products (Defendant's Bates Stamp Nos. RH CONFIDENTIAL 0000012 through 0000014).

32.    Rolf C. Hagen (USA) Corp. letter, undated, signed by Trevor Hagen (Defendant's Bates Stamp No. RH 0000015).

33.    Rolf C. Hagen (USA) Corp. Materials from Hagen Preferred Dealer Program Binder (Defendant's Bates Stamp Nos. RH 0000016 through 0000027).

34.    Rolf C. Hagen (USA) Corp. Materials from Hagen Preferred Dealer Program Binder (Defendant's Bates Stamp Nos. RH 0000028 through 0000031).

35.    Rolf C. Hagen (USA) Corp. Materials from Hagen Direct Binder (Defendant's Bates Stamp Nos. RH 0000032 through 0000041).

//

Case 2:08-cv-02201-LKK-JFM   Document 66   Filed 04/16/10   Page 43 of 46
Case 2:08-cv-02201-LKK-JFM   Document 65   Filed 04/15/2010   Page 43 of 46

Case 2:08-cv-02201-LKK-JFM   Document 46   Filed 02/01/2010   Page 5 of 5

36.   Rolf C. Hagen (USA) Corp. Materials from Hagen Preferred Dealer Program Binder (Defendant's Bates Stamp Nos. RH 0000042 through 0000050).

37.   Rolf C. Hagen (USA) Corp. Materials from the "Why Partner With Hagen" Binder (Defendant's Bates Stamp Nos. RH 0000051 through 0000069).

38.   Summary Report of Hagen Products (Plaintiff's Bate Stamp Nos. 0090-001691).

39.   Defendant Rolf C. Hagen (USA) Corp. Expert Witness Designation, dated July 28, 2009, with attached Expert Witness Reports of Defendant's experts Glen W. Novotny and Ronald G. Pomares (Expert Witness Designation and attached reports total 23 pages).

40.   Plaintiff reserves the right to offer any documents or exhibits offered by Defendant in its Separate PreTrial Statement or at trial, including documents or exhibits relied upon by defendant's expert witnesses.

41.   Plaintiff reserves the right to offer any documents or exhibits the existence of which are discovered by plaintiff after the date of this Pretrial Statement including, without limitation, documents produced by defendant or any non-party pursuant to a trial subpoena.

Respectfully submitted,

Dated: February 1, 2010

LAW OFFICES OF
CHRISTOPHER W. SWEENEY

By:   /s/ Christopher W. Sweeney
      Christopher W. Sweeney
      Attorney for Plaintiff BOLAND, INC.,
      dba S&S SUPPLIES

Plaintiff's Exhibit List - CASE NO. 2:08-CV-02201-LKK-JFM (E-filing)

Case 2:08-cv-02201-LKK-JFM   Document 66   Filed 04/16/10   Page 44 of 46
Case 2:08-cv-02201-LKK-JFM   Document 65   Filed 04/15/2010   Page 44 of 46
Case 2:08-cv-02201-LKK-JFM   Document 49   Filed 02/08/2010   Page 1 of 3

1  SEYFARTH SHAW LLP
   Lawrence E. Butler (SBN: 111043)
2  E-Mail: lbutler@seyfarth.com
   Andrea K. Anapolsky (SBN: 238297)
3  E-Mail: aanapolsky@seyfarth.com
   560 Mission Street, Suite 3100
4  San Francisco, California 94105
   Telephone: (415) 397-2823
5  Facsimile: (415) 397-8549

6  Attorneys for Defendant
   ROLF C. HAGEN (USA) CORP.
7

8                  UNITED STATES DISTRICT COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10 BOLAND, INC., a California corporation dba    )  Case No. 2:08-CV-02201-LKK-JFM
   S&S SUPPLIES,                                 )
11                                               )  DEFENDANT'S EXHIBIT LIST
                    Plaintiff,                   )  (Attached as Attachment B to
12                                               )  Defendant's Separate Pre-Trial
          v.                                     )  Statement)
13                                               )
   ROLF C. HAGEN (USA) CORP., and DOES 1         )
14 through 50, inclusive,                        )  Date:  February 16, 2010
                                                 )  Time:  1:30 p.m.
15                  Defendants.                   )  Judge: Hon. Lawrence K. Karlton
                                                 )
16                                               )
                                                 )
17

18        ROLF C. HAGEN (USA) CORP. ("Hagen") respectfully submits this Exhibit List as

19 Attachment "B" to Hagen's Separate Pre-Trial Statement in advance of the Final Pretrial

20 Conference scheduled for February 16, 2010 in the above captioned matter pursuant to the

21 Court's Status (Pretrial Scheduling) Conference Order entered in the matter on December 18,

22 2008.

23        Hagen presently expects to offer the following documents and exhibits at trial:

24        A.     Emails dated March 22, 2007 through March 27, 2007 between and among Sam

25 Sarkissian, Dieter Hagen, Trevor Hagen and Linda Kusaka (Plaintiff's Bates Stamp Nos. P-0011

26 through P-0089).

27        B.     Summary of Plaintiff's Invoice Amounts from November 2006 through January

28 2007 (Hagen's Bate Stamp No. RH CONFIDENTIAL 0000070.)

                          *ATTACHMENT "D"*

HAGEN'S EXHIBIT LIST/CASE No. 2:08-CV-02201-LKK-JFM

Case 2:08-cv-02201-LKK-JFM   Document 66   Filed 04/16/10   Page 45 of 46
Case 2:08-cv-02201-LKK-JFM   Document 65   Filed 04/15/2010   Page 45 of 46
Case 2:08-cv-02201-LKK-JFM   Document 49   Filed 02/08/2010   Page 2 of 3

1    C.    Hagen invoices and credit reports from February 2, 2005 through January 31,

2    2007 (Hagen's Bate Stamp No. RH CONFIDENTIAL 0000071 through 0000188).

3    D.    Hagen invoices dated January 15, 2007 (Hagen's Bate Stamp No. RH

4    CONFIDENTIAL 0000005 through 0000009).

5    E.    Report of Disputed Inventory Remaining as of February 1, 2007 (Plaintiff's Bates

6    Stamp Nos. P-CONFIDENTIAL 0021746 through 0021763).

7    F.    Letter identified as Exhibit 1 attached to the Deposition of Sam Sarkissian.

8    G.    2006 Detail Summary Report of Costs and Sales of Hagen Products (Plaintiff's

9    Bates Stamp Nos. P-CONFIDENTIAL 0018605 through 0019733).

10   H.    2007 Detail Summary Report of Costs and Sales of Hagen Products (Plaintiff's

11   Bates Stamp Nos. P-CONFIDENTIAL 0019734 through 0020144).

12   I.    2008 Detail Summary Report of Costs and Sales of Hagen Products (Plaintiff's

13   Bates Stamp Nos. P-CONFIDENTIAL 0020145 through 0020222).

14   J.    2009 Detail Summary Report of Costs and Sales of Hagen Products (Plaintiff's

15   Bates Stamp Nos. P-CONFIDENTIAL 0020223 through 0020230).

16   K.    Hagen's Expert Witness Designation, dated July 28, 2009, with attached Expert

17   Witness Report of Hagen's expert Ronald G. Pomares.

18   L.    Deposition Transcript and Exhibits to the Deposition of Sam Sarkissian.

19   M.    Deposition Transcript and Exhibits to the Deposition of Greg Sarkissian.

20   N.    Deposition Transcript and Exhibits to the Deposition of Linda Kusaka.

21   O.    Deposition Transcript and Exhibits to the Deposition of Dieter Hagen.

22   P.    Deposition Transcript and Exhibits to the Deposition of Trevor Hagen.

23   Hagen reserves the right to offer any documents or exhibits offered by Plaintiff in its

24   Separate Pre-Trial Statement or at trial, including documents or exhibits relied upon by

25   Plaintiff's expert witnesses.

26   //

27   //

28   //

2

1       Hagen reserves the right to offer any documents or exhibits the existence of which are

2   discovered by Hagen after the date of this Pretrial Statement including, without limitation,

3   documents produced by Plaintiff or any non-party pursuant to a trial subpoena.

4   DATED: February 8, 2010                  SEYFARTH SHAW LLP

5

6                              /s/ Andrea K. Anapolsky
                      By_____

7                           Lawrence E. Butler
                            Andrea K. Anapolsky
8                     Attorneys for Defendant
                      ROLF C. HAGEN (USA) CORP.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HAGEN'S EXHIBIT LIST/CASE NO. 2:08-CV-02201-LKK-JFM